Pavline MORRILL, Individually and as Next Friend of Sondra Alyse Morrill, a Minor, Appellant,

v.

THIRD COAST EMERGENCY PHYSICIANS, P.A., Milton Shaw, M.D., and Sid Peterson Memorial Hospital, Appellees.

No. 04–99–00819–CV.

Court of Appeals of Texas, San Antonio.

Oct. 11, 2000.

Rehearing Overruled Nov. 15, 2000.

John N. Mastin, San Antonio, for Appellant.

Fred E. Davis, Davis & Davis, P.C., Austin, M. Scott Stehling, Kerrville, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: SARAH B. DUNCAN, Justice.

Pavline Morrill, individually and as next friend of her daughter, Sondra Alyse Morrill, appeals the trial court's judgment dismissing her medical malpractice action against Third Coast Emergency Physicians, Dr. Milton Shaw, and Sid Peterson Memorial Hospital. The issue is whether Morrill's expert report is sufficient to satisfy the requirements of the Texas Medical Malpractice Liability Act. We hold the report is sufficient as to Dr. Shaw only. We therefore reverse the trial court's judgment dismissing Morrill's claims against Dr. Shaw and remand these claims for further proceedings. In all other respects, the trial court's judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Morrill alleges Sondra was negligently diagnosed and treated by Shaw at the Hospital's emergency room, which was staffed by Third Coast pursuant to a contract with the Hospital. Within one hundred and eighty days of filing suit, Morrill served the defendants' attorneys with a copy of a report by Donald J. Gordon, Ph.D., M.D. According to this report, Dr. Gordon is a licensed physician who has practiced in Bexar County and specialized in emergency medicine for the past twenty years; he has supervised the emergency medicine education of medical students and emergency medical technicians for the

past twenty years in South Texas; and he has served as the EMS medical director for the last thirteen years.

Dr. Gordon's report also states that, as a result of his training, reading, and medical practice, he has knowledge of the proper care and emergency treatment of patients of all ages presenting to an emergency room with acute infectious illnesses. He also has knowledge of accepted standards of care for the emergency diagnosis, emergency care, and emergency treatment of bacterial meningitis, the condition affecting Sondra on the date in question. Dr. Gordon goes on to state his "preliminary opinion":

> Dr. Milton Shaw, M.D., caused injury to Sandra [sic] Alyse Morrill by not immediately recognizing the likely medically [sic] probability of bacterial meningitis, by not diagnosing bacterial meningitis, by not ordering blood and spinal fluid cultures, by not immediately beginning a course of antibiotic therapy, by not admitting Sandra [sic] Morrill to the hospital, and by not arranging for appropriate care of Sandra [sic] Morrill. Pending a review of other pertinent documentation in this case, I am unable to ascertain at this time whether I will have additional opinions regarding the medical negligence of Dr. Milton Shaw in this case. At this time, I am convinced that the delay in care of Sandra [sic] Morrill caused by those actions or omissions delayed her treatment resulted in injury to her.

Following this preliminary opinion, Dr. Gordon's report reviewed the medical records with which he had been provided. Dr. Gordon was particularly critical of Dr. Shaw for sending one tube of spinal tap fluid for CIE tests, rather than cultures. According to Dr. Gordon, CIE tests:

> are notoriously less reliable for diagnosis than are cultures. Directogen (CIE) tests have some measure of value only when positive and are used to assist in choosing an appropriate antibiotic until the cultures come back. Sandra's [sic]

CSF was negative by bacterial CIE analysis. Unfortunately, false negatives and positives are common with these tests which explain why they are of little value for screening for bacterial meningitis. Also, commonly, tube #4 or 2 are sent for gram stain. This was apparently not done in this case but Dr. Shaw's note states that, "Cultures are pending at this time." There are no laboratory reports in the records which I reviewed to indicate that cultures were requested or completed on Sandra [sic] Morrill's CSF.

Dr. Gordon's report concludes:

## SUMMARY:

> I am familiar with some of the facts and situations giving rise to this claim. As a result of this, it is my preliminary belief that serious breaches of the standards of care involving appropriate examination, documentation, laboratory testing, diagnosis, treatment involving the care of Sandra [sic] Morrill on July 29, 1997 by Dr. Milton Shaw, M.D., and that she was severely harmed and suffered serious injury as a direct result.
>
> Additionally, it is my belief that Dr. Milton Shaw, MD, placed persons who had close contact with Sandra [sic] Morrill in jeopardy due to his failure to perform cultures and his failure to admit Sandra [sic] Morrill to the hospital with a clinical diagnosis of bacterial meningitis. His reliance on CIE tests was clearly below the standard of care both for the patient and for the public health. It is my firm belief that in this case, his management was medically negligent and certainly not in keeping with the standard of care for this patient.

After receiving Gordon's report, the defendants moved to dismiss Morrill's action because Gordon was not a qualified expert, and his report failed to comply with the requirements of section 13.01(d) and (r) of article 4590i. After a hearing, the trial court dismissed Morrill's action with prejudice.

## STANDARD OF REVIEW

 We review the trial court's dismissal order under an abuse of discretion standard. *Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.—San Antonio 1999, pet. denied). Under this standard, a reviewing court may not disturb the trial court's resolution of factual issues, even if the reviewing court would have decided the issue differently, unless the resolution is shown to be arbitrary and unreasonable. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). A trial court's resolution of a factual issue is arbitrary and unreasonable if the relator establishes that the trial court could reasonably have reached only one decision. *Id.* at 840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to facts." *Id.* Thus, the failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

## APPLICABLE LAW

Section 13.01(d) of article 4590i provides:

> (d) Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:
>> (1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or
>> (2) voluntarily nonsuit the action against the physician or health care provider.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(d) (Vernon Supp.1999). " 'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6). "A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section." *Id.* § 13.01(*l*). If a claimant fails to file the required expert report timely, the trial court may grant an extension:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

*Id.* § 13.01(g).

## GORDON'S QUALIFICATIONS

 Morrill contends the trial court erred in dismissing her claims on the ground that Gordon did not possess the requisite expertise to render an expert report, if it did so. We agree. Dr. Gordon meets the definition of an "expert" for purpose of section 13.01. *See id.* §§ 13.01(r)(5)(A) and (B), 14.01.

## ADEQUACY OF GORDON'S REPORT

Morrill argues the trial court erred in dismissing her claims on the ground that Gordon's report fails to comply with sections 13.01(d) and 13.01(r)(6). We agree in part.

## 328

### Dr. Shaw

■ In his motion to dismiss, Dr. Shaw argued Dr. Gordon's report fails to set forth the applicable standard of care or to allege how Dr. Shaw breached the applicable standard of care. We disagree. Throughout his report, Dr. Gordon states what should have been done in terms of examination, documentation, testing, diagnosis and treatment and points out how Dr. Shaw's actions fell short. Further, Dr. Gordon's report specifically states Dr. Shaw's "reliance on CIE tests was clearly below the standard of care both for the patient and for the public health." Dr. Shaw also contends Dr. Gordon's report fails to establish causation. We again disagree. Dr. Gordon's report specifically states "the delay in care of Sandra [sic] Morrill caused by [the acts and omissions noted in his report] resulted in injury to her." We therefore reverse the trial court's judgment insofar as it dismisses Morrill's claims against Dr. Shaw and remand these claims for further proceedings.

### Third Coast and The Hospital

■ Morrill also argues Gordon's report details the deviations from the standard of care by Third Coast and the Hospital. We disagree. Nowhere in the report does Gordon state the standard of care applicable to these health care providers or allege a breach of the standard. *See id.* § 13.01(r)(6); *see also Wood v. Tice,* 988 S.W.2d 829, 831 (Tex.App.—San Antonio 1999, pet. denied) ("The report must specifically refer to the defendant and discuss how that defendant breached the applicable standard of care.") (citing *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 535 (Tex.App.—Texarkana 1998, no pet.)).

### 30–Day Grace Period

■ Morrill contends the trial court erred in denying her the thirty-day grace period permitted by section 13.01(g). She contends she complied with the statute by filing a motion before the dismissal hearing. However, no such motion is contained in the record. We therefore overrule Morrill's second point of error. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(g).

### Constitutionality of Expert Report Requirement

■ Finally, Morrill argues the requirement that she file an expert report violates her state and federal constitutional rights. However, Morrill did not raise her constitutional claims in the trial court, and they are waived. *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993). We therefore overrule Morrill's third point of error.

### Conclusion

Morrill failed to file an expert report addressing her claims against Third Coast Emergency Physicians and Sid Peterson Memorial Hospital. We therefore affirm the trial court's judgment insofar as it dismisses Morrill's claims against these defendants. However, Morrill's expert report sufficiently describes and supports her claims against Dr. Milton Shaw. We therefore reverse the trial court's judgment dismissing Morrill's claims against Dr. Shaw and remand these claims for further proceedings.