No. 04-01-00057-CV



Jewel Dean WICKWARE, Individually and as Executrix of the Estate of Mark E. Wickware,
Deceased; Wanda Beaumont; Jacqueline S. Wickware,

Appellants


v.



Dr. Helen SULLIVAN; Dr. Eugene Haddock; Dr. Robert LePere; Dr. A. Charles Rabinowitz;
Humana Health Plan of Texas, Inc. (improperly named as Humana Health Plan of

 San Antonio, Inc. and/or Humana, Inc., d/b/a Humana Gold Plus Plan); Methodist Healthcare
System of San Antonio, Ltd. d/b/a Methodist Specialty and Transplant Hospital

 f/k/a San Antonio Community Hospital; and FPA Medical Management of Texas, Inc.,

Appellees


From the 224th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CI-08024


Honorable Peter Michael Curry, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: December 12, 2001


AFFIRMED

 This is an appeal brought by pro se appellants from an order dismissing their health care
liability claim for failure to comply with the security for costs requirements of the Medical Liability
and Insurance Improvement Act of Texas (Article 4590i). 

 In an effort to protect health care providers from the costs of frivolous claims, Article 4590i
requires medical malpractice claimants to post various forms of security within 90 days of filing suit.
Indigent claimants who cannot afford to provide security bonds or escrow deposits are permitted to
file affidavits establishing their inability to post security for costs. In this case, we are asked to
determine whether such affidavits must be filed within 90 days of filing suit. Based upon the clear
wording and stated purpose of Article 4590i, we answer the question affirmatively. Because
appellants failed to file their affidavits within 90 days of filing suit, we affirm the trial court's order
of dismissal. 

Statutory Overview


 Article 4590i was enacted in 1977 to address what the Legislature termed "a medical
malpractice insurance crisis in the State of Texas." Tex. Rev. Civ. Stat. Ann. art. 4590i §1.02(a)(5)
(Vernon Supp. 2001). The Legislature intended the statute to improve the legal system and liability
laws by reducing the excessive frequency of health care liability claims within the state. Id. at
§1.02(b)(1). The security provisions of section 13.01 were incorporated into the statute in 1993 and
later amended in 1995 to help further address: 


the perceived problem that litigants were filing unmeritorious claims against medical
practitioners which were not adequately investigated in a timely manner. This, it is
said, led doctors to settle such suits, regardless of the merits, and also to expend great
amounts of money on defending against ultimately "frivolous claims."


Horsley-Layman v. Angeles, 968 S.W.2d 533, 537 (Tex. App.--Texarkana 1998, no pet.) (citing
House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995)). 

 Sections 13.01(a) and (b) establish the "framework" for posting security for costs under the
statute, while subsection (o) provides an exception to such requirements for pro se claimants who
cannot afford to post security for costs. To maintain a lawsuit under Article 4590i, a claimant must
initially comply with section 13.01(a). Subsection (a) states that a medical malpractice claimant
shall post a $5,000 cost bond or deposit $5,000 into escrow for each defendant named in the action
no later than 90 days after the suit is commenced. (1) Tex. Rev. Civ. Stat. Ann. art. 4590i §§
13.01(a)(1), (2) (Vernon Supp. 2001). In cases involving pro se claimants, however, subsection (o)
provides such claimants with an alternative to posting a cost bond or making a cash deposit -- they
may file an affidavit of inability to post security for costs. Id. at § 13.01(o). If 90 days have passed
and the claimant has yet to post any security, the trial court must, upon the motion of a defendant,
enter an order requiring the claimant to post a $7,500 "penalty" bond for each defendant sued to
maintain the lawsuit. Id. at § 13.01(b)(1). A claimant who fails to post the penalty bonds within 21
days of the trial court's order shall have his or her lawsuit dismissed. Id. at § 13.01(b)(2). (2)

 In the case at bar, the claimants' case turns on the relationship between sections 13.01(a), (b),
and (o). Our primary concern on this appeal is to determine whether subsection (o) exempts the
claimants from filing their affidavits of inability to post security for costs within the 90-day
procedural deadline of subsection (a).

Background 


 Jewel Dean Wickware, Individually and as Executrix of the Estate of Mark E. Wickware,
Deceased, Wanda Beaumont, and Jacqueline S. Wickware (the "Wickwares") appeal the trial court's
order dismissing their action against numerous physicians and health care entities for the death of
Mark E. Wickware. The facts pertinent to our analysis are set forth in the following time line:

Time Line of Events


May 31, 2000: The Wickwares commenced their lawsuit.

August 29, 2000: Day 90, the Wickwares must post security for costs by this date to
maintain their lawsuit and comply with section 13.01(a) of the statute.


 August 30, 2000: Physicians filed a motion to compel requesting the trial court to
impose subsection (b) penalty bonds because the Wickwares failed to
post any security within 90 days of filing suit.


September 6, 2000: Day 98, the Wickwares filed section 13.01(o) affidavits asking to be
excused from posting the security required by subsection (a).


September 20, 2000: Physicians filed a motion re-urging their motion to compel and
challenging the timeliness and substantive contents of the
Wickwares' subsection (o) affidavits.


 September 27, 2000: After considering the Wickwares' late affidavits and concluding that
the Wickwares had sufficient income to post security, the trial court
granted Physicians' motion and entered an order imposing a
subsection (b) penalty bond upon the Wickwares for each defendant
sued. The trial court set the deadline to post the penalty bonds for
October 18, 2000.


October 12, 2000: Physicians filed a motion to dismiss in anticipation of the Wickwares'
failure to comply with the trial court's order.


October 16, 2000: The Wickwares filed amended subsection (o) affidavits and requested
a hearing on their amended affidavits.


October 18, 2000: The final day for the Wickwares to post the court-ordered penalty
bonds. 


October 19, 2000: The trial court dismisses the Wickwares' action for their failure to
post the penalty bonds.



Standard of Review


 Ordinarily, we apply an abuse of discretion standard when reviewing a dismissal under
section 13.01, reversing only if the trial court acts unreasonably or arbitrarily. American Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001); Morrill v. Third Coast
Emergency Physicians, P.A., 32 S.W.3d 324, 327 (Tex. App.--San Antonio 2000, pet. denied). A
trial court will be deemed to have acted arbitrarily and unreasonably if it is demonstrated that the trial
court could have reached only one decision. Morrill, 32 S.W.3d at 327. We may not disturb the trial
court's resolution of factual issues, even if we would have decided the issues differently. Id.
However, when issues involve the interpretation of the statute itself, we apply a de novo standard
of review. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989) (holding statutory
construction is a question of law). 

 In construing a statute, our main objective is to ascertain and give effect to the intent of the
Legislature. Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 892 (Tex. 2000). When
interpreting a statute, we "consider the entire act, its nature and object, and the consequences that
would follow from each construction." Tex. Gov't Code Ann. § 311.023 (Vernon 1998); Sharp
v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991). We must "reject interpretations of the
statute which would defeat the purpose of the legislation so long as another reasonable interpretation
exists." Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996).
When a statute is clear and unambiguous, we need not resort to rules of construction or extrinsic
evidence to construe it. Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). Instead,
we may determine the intent of the Legislature from the plain and ordinary meaning of the words
used within the statute. Id. 


Discussion


 The Wickwares argue that nothing in subsection (o) indicates that the Legislature intended
for the 90-day deadline of subsection (a) to apply to the filing of affidavits of inability to pay costs.
Additionally, the Wickwares argue that had the Legislature intended to have this deadline apply to
claimants like themselves, it would have included it within subsection (o). Therefore, because
subsection (o) does not specifically limit the filing of their affidavits to a particular time period, the
Wickwares claim they were free to file their affidavits at any time -- even after subsection (a)'s 90-day deadline had passed. We disagree.

 The provisions of Article 4590i section 13.01 are clear and unambiguous; therefore, we may
determine the intent of the Legislature from the plain and ordinary meaning of the words used within
the statute. See Tex. Rev. Civ. Stat. Ann. art. 4590i §§ 13.01(a), (b) (Vernon Supp. 2001); Thomas
v. Ben Taub Gen. Hosp., 63 S.W.3d 908, 911 (Tex. App.--Houston [14th Dist.] no pet. h.).
Subsection (a) states that a claimant "shall" file an expert report, post a $5,000 cost bond, or deposit
$5,000 in escrow for each defendant named in the action no later than 90 days after the suit is
commenced. Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(a) (Vernon Supp. 2001). If the claimant
"fails to post the required security within this 90-day period," subsection (b) provides that the trial
court "shall"enter an order directing the claimant to post a $7,500 penalty bond within 21 days of
its order. Id. at § 13.01(b) (also providing that any claimant who fails to comply with this court
order shall have his or her lawsuit dismissed for want of prosecution). The Legislature's use of word
"shall" within subsections (a) and (b) indicates that compliance with subsection (a)'s 90-day deadline
is mandatory. See id. at §§ 13.01(a), (b). 

 

 By contrast, subsection (o) states:

[n]otwithstanding any other provision of this section, a claimant who is proceeding
without an attorney and who is unable to afford a cost bond or cash deposit may, in
lieu of a cost bond or cash deposit, file an affidavit in the same form required for an
affidavit in lieu of security for costs under the Texas Rules of Civil Procedure.


Id. at § 13.01(o). The plain language of subsection (o) reveals that the Legislature intended it to be
read in conjunction with subsection (a). Subsection (o) merely serves to provide a narrow class of
claimants with an alternative means of satisfying subsection (a)'s security requirement. It allows
indigent pro se claimants to file an affidavit of their inability to post security for costs instead of
posting a cost bond or depositing cash into escrow. There is no language within subsection (o),
however, indicating that the Legislature intended to excuse these same claimants from complying
with subsection (a)'s 90-day deadline. The likely reason for the Legislature incorporating subsection
(o) into the statute is to ensure that indigent claimants are not denied a forum in which to adjudicate
their rights simply because they cannot overcome the financial hurdles created by the statute. This
interpretation is not only required by the plain language of Article 4590i, but is necessary to remain
in harmony with the statute's purpose. 

 As previously noted, Article 4590i was enacted in 1977 to address what the Legislature
termed "a medical malpractice insurance crisis in the State of Texas." Id. at § 1.02(a)(5). The
Legislature later enacted and amended section 13.01 to further address the continuing crisis. See
McGlothlin v. Cullington, 989 S.W.2d 449, 451 (Tex. App.--Austin 1999, pet. denied). In
particular, the Legislature intended section 13.01 to serve two important purposes. Id. First, to keep
down medical insurance and health care costs by reducing the filing of frivolous medical malpractice
claims. Id. Second, to allow defendant physicians to recoup some of their court costs from a
successful defense. Id. In light of these objectives, we hold that subsection (a)'s procedural deadline
applies to the filing of subsection (o) affidavits because it is clear that the Legislature has determined
that having a strict 90-day deadline for the posting of security for costs helps to reduce the filing of
unmeritorious health care claims in our state. 

 Here, the Wickwares commenced suit on May 31, 2000. Thus, the Wickwares had to post
a cost bond, deposit cash into escrow, file an expert report, or file a subsection (o) affidavit by
August 29, 2000 to comply with the requirements of the statute. The Wickwares failed to take any
action within this 90-day period. After Physicians filed their motion to compel, the Wickwares took
their first step towards complying with the statute by filing affidavits of inability to post security for
costs eight days after subsection (a)'s deadline had passed. Physicians immediately responded to the
Wickwares' affidavits by filing a motion that re-urged their motion to compel and challenged the
timeliness and substantiveness of the Wickwares' affidavits. At the hearing on the Physicians'
motion, the trial court considered the Wickwares' affidavits to determine whether they demonstrated
an inability to post security for costs, even though the affidavits were not filed within subsection (a)'s
strict 90-day deadline. The trial court's decision to review the substantiveness of these untimely
affidavits constituted an abuse of discretion.

 Subsection (b) removes all of the trial court's discretion when it comes to reviewing a
subsection (o) affidavit not timely filed. This subsection specifically states:

 If, as to a defendant physician or health care provider, an expert report, cost bond, or
cash in lieu of bond has not been filed or deposited within the period specified by
section (a) of this section, the court, on the motion of the affected physician or health
care provider, shall enter an order that: (1) requires the filing of a $7,500 cost bond with
respect to the physician or health care provider not later than the 21st day after the date
of the order . . . . Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(b)(1) (Vernon Supp. 2001). Thus, this provision's
plain language mandates that, upon the motion of a defendant, the trial court impose a $7,500 penalty
bond for a claimant's failure to comply with subsection (a)'s 90-day deadline. Nothing within
subsection (b)'s language implies that a trial court has the authority to disregard the Legislature's
directives when it comes to considering the untimely posting of security, or in our case, the untimely
filing of affidavits of inability to post security for costs. 

 Here, when the Wickwares did not file their subsection (o) affidavits within subsection (a)'s
90-day deadline and Physicians made a motion for penalty bonds, the trial court was statutorily
required to impose the bonds upon the Wickwares. Notwithstanding the timeliness issue, the trial
court correctly imposed subsection (b) penalty bonds in this instance. Moreover, when the
Wickwares failed to post the statutorily-mandated penalty bonds, the trial court properly dismissed
the suit under section 13.01(b). Id. at § 13.01(b)(2).

Conclusion

We hold that Article 4590i requires pro se claimants to file their affidavits of inability to post
security for costs within section 13.01(a)'s 90-day procedural deadline. Accordingly, we conclude
that the trial court abused its discretion in considering the Wickwares' late subsection (o) affidavits
because, upon subsection (a)'s deadline passing, subsection (b) removed all of the trial court's
discretion and required the imposition of penalty bonds upon the Wickwares. Although the trial
court improperly considered the Wickwares' late subsection (o) affidavits, it correctly imposed
penalty bonds upon the Wickwares. Therefore, when the Wickwares failed to post the court ordered
security, the trial court properly dismissed their case. 

 The trial court's order of dismissal is affirmed. 


 Catherine Stone, Justice

PUBLISH
1. Subsection (a) also allows claimants to file an expert report for each defendant sued in lieu of posting a cost
bond or depositing cash into escrow. Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(a)(3) (Vernon Supp. 2001).
2. The claimant, however, may have his or her lawsuit reinstated if the claimant pays the costs of court incurred
by the defendant before the dismissal and also files a $7,500 cost bond for each of the defendants sued. Tex. Rev. Civ.
Stat. Ann. art. 4590i § 13.01(c) (Vernon Supp. 2001).