Lamar **VILLA, Individually and as Representative of the Estate of Nora Villa, deceased; Lamar Villa as Next Friend of Olivia Villa; Raul David Villa and Tomas Javier Villa, Appellants,**

v.

Lubrett **HARGROVE, M.D., and Christus Spohn Health System d/b/a Christus Spohn Brooks Family Health Center, Appellees.**

No. 04–02–00213–CV.

Court of Appeals of Texas, San Antonio.

April 9, 2003.

William J. Tinning, Harris Meija & Tinning, LLP, Portland, and David T. Garcia, Falfurrias, for Appellants.

Robert J. Sigler and Clay E. Coalson, Meredith, Donnell & Abernethy, P.C., Corpus Christi, W. Richard Wagner, Patterson & Wagner, L.L.P., San Antonio, for Appellees.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and KAREN ANGELINI, Justice.

Opinion by: PAUL W. GREEN, Justice

This appeal arises from the trial court's dismissal of a medical malpractice suit. Appellants Lamar Villa and his family (Villas) filed suit against Appellees Dr. Lubrett Hargrove (Hargrove) and Christus Spohn Health System ·d/b/a Christus Spohn Brooks Family Health Center (Health Center) on April 6, 2001. The Villas presented the appellees with an expert report on June 12, 2001, within the 180 day deadline prescribed by Article 4590i § 13.01(d). On December 5, 2001, Hargrove filed a motion to dismiss, based on his belief that the report failed to comply with the expert report requirements iterated in Article 4590i § 13.01(r)(6). On December 7, 2001, the Health Center filed its own motion to dismiss based on the same reasoning. Following a hearing, the trial court granted the appellees' motions, dismissing the Villas' causes of action. The Villas now appeal, raising three issues.

## BACKGROUND

On the evening of November 7, 1999, Nora Villa was admitted to Christus Spohn Brooks Family Health Center and seen by Dr. Lubrett Hargrove. She presented with several symptoms, including body aches, fever, and chills. Ms. Villa remained at the Health Center for approximately two hours while several tests were conducted and the results examined. The test results were consistent with a urinary tract infection (UTI). Hargrove diagnosed Ms. Villa with a UTI, prescribed an antibiotic and suggested a follow up with Ms. Villa's local doctor, instructing her to return to the Health Center if needed.

On the morning of November 9, 1999, approximately 32 hours after Ms. Villa visited the Health Center, she presented at the Falfurrias Medical Clinic and was eval-

uated by a physician's assistant. Ms. Villa was suffering from dizziness and vomiting when she arrived at the Falfurrias Clinic. She was given fluids and a drug for epigastric problems. She was then discharged with instruction on nourishment and advised to follow up the next day.

Ms. Villa continued to suffer from the same problems and returned to the Falfurrias Clinic later the same afternoon. She was immediately transferred to Christus Spohn Hospital Alice. By the time Ms. Villa arrived at the hospital in Alice she was unresponsive. She was diagnosed with bacterial meningitis and again transferred, this time to Spohn Memorial Hospital Corpus Christi. Upon arrival, Ms. Villa was considered brain dead and went into cardio-respiratory arrest. The physicians were not able to resuscitate her and she was pronounced dead on November 10, 1999.

Ms. Villa's family filed suit against Hargrove and the Christus Spohn Health System on April 6, 2001.[1] On June 12, 2001, the Villas presented the appellees with an expert report from Dr. Lawrence Repsher as required under Article 4590i § 13.01(d). On December 5, 2001, Hargrove filed a motion to dismiss, citing the inadequacy of the expert report under Article 4590i § 13.01(r)(6). Two days later, the Health Center did the same, filing its own motion to dismiss. On December 10, 2001, the Villas filed an amended report, and on December 14, 2001, they filed a supplemental affidavit regarding the report. After a hearing, the trial court found the June expert report did not meet the requirements of section 13.01 and dismissed the Villas' causes of action with prejudice as required under the statute. TEX.REV. CIV. STAT. ANN. art. 4590i § 13.01(d). The

Villas now appeal, complaining (1) that their expert report met the requirements of Article 4590i § 13.01 and (2) that applying the reasoning of *American Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.2001) to their case results in a violation of the equal protection and due process clauses of the United States Constitution.

### ADEQUACY OF EXPERT REPORT UNDER 4590i § 13.01

We review the trial court's ruling as to the adequacy of an Article 4590i expert report under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 877; *De Leon v. Vela*, 70 S.W.3d 194, 197 (Tex. App.-San Antonio 2001, pet. denied). We may not disturb the trial court's decision unless that decision is shown to be arbitrary and unreasonable. *Morrill v. Third Coast Emergency Physicians, P.A.*, 32 S.W.3d 324, 327 (Tex.App.-San Antonio 2000, pet. denied). A trial court will be deemed to have acted arbitrarily and unreasonably if it is demonstrated that the trial court could have reached only one decision. *De Leon*, 70 S.W.3d at 197; *Morrill*, 32 S.W.3d at 327.

The Texas Medical Liability and Insurance Improvement Act sets forth explicit requirements for the filing of expert reports. TEX.REV.CIV. STATE. ANN. art. 4590i § 13.01. Section 13.01 prescribes the requirements necessary for an expert's report. In their first issue, the Villas contend Dr. Repshaw's June 12, 2001, report complies with the statutory requirements and represents a good faith effort to comply with the statutory definition of an expert report as required by sections 13.01(*l*) and 13.01(r)(6). *Id.*

---

[1] The Villas also sued Salvador Torres Torres, P.A., Mauricio B. Teixira, M.D., and Alice Physicians and Surgeons Hospital, Inc. d/b/a/ Falfurrias Medical Clinic. These parties, however, were nonsuited and are not a part of this appeal.

Under Article 4590i, a medical malpractice plaintiff is required to furnish an expert report which sets out the standard of care, describes how each defendant breached the standard, and explains how such breach caused or contributed to the plaintiffs' alleged injury. TEX.REV.STAT. ANN. art. 4590i § 13.01(d). A copy of the expert's report or reports must be furnished, within 180 days of filing suit, to each physician or health care provider against whom a claim is asserted. *Id.* If the plaintiff fails to provide the report to the defendant, he must voluntarily nonsuit the action against the physician or health care provider. *Id.* An "expert report" is defined in the statute as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* at § 13.01(r)(6).

■ Pursuant to sections 13.01(*l*) and 13.01(r)(6), an expert report must represent a good faith effort to provide a fair summary of the expert's opinions. *De Leon*, 70 S.W.3d at 198. If it appears to the court after a hearing that the report does not represent a good faith effort to comply with the definition of an expert report found in subsection (r)(6), the court shall grant a motion challenging the adequacy of the expert report. *Id.* at 13.01(*l*). The expert report does not need to marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878; *Doades v. Syed*, 94 S.W.3d 664, 671 (Tex.App.-San Antonio 2002, no pet.). In *Palacios*, the Texas Supreme Court found that an expert report must accomplish two specific goals in order to meet section 13.01's requirements. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, the report must provide a basis for the trial court to conclude the claims in question have merit. *Palacios*, 46 S.W.3d at 879; *Doades*, 94 S.W.3d at 671. A report that fails to lay out the required elements, simply stating the expert's conclusions as to the standard of care, breach, and causation, does not meet these purposes or constitute a good faith effort. *Palacios*, 46 S.W.3d at 879; *Doades* 94 S.W.3d at 671. In deciding whether the statutory standard is met, a trial court should stay within the four corners of the expert report, itself, without considering referenced medical records or affidavits. *Palacios*, 46 S.W.3d at 878; *DeLeon*, 70 S.W.3d at 198.

On June 12, 2001, the Villas presented Dr. Hargrove and the Health Center with a report from Dr. Lawrence Repsher. The report is set out as follows:

I received your letter of 1 March 2001 and the enclosed medical records of Ms. Nora Villa. After my review of these records, it is my opinion that she received substandard care from the Brooks Family Health Center by failing to recognize imminent sepsis and hospitalizing Ms. Villa and the Alice Physicians & Surgeons Hospital for not recognizing actual sepsis and having Ms. Villa urgently transported to the nearest hospital early on the morning of 9 November 1999. It is further my opinion that, had either of these defendants provided the appropriate care, to an overwhelming probability, Ms. Nora Villa would be alive and well today.

■ This brief report fails to meet the requirements of section 13.01(r)(6). First, the report fails to iterate the applicable standard of care. Repsher does not describe the procedures that should be fol-

lowed when a patient with Ms. Villa's symptoms presents to a health care facility. Indeed, he fails to describe Ms. Villa's condition at all. Instead, Repsher uses conclusory statements to determine that Ms. Villa received "substandard care." General conclusory statements about the standard of care applicable to any given case are not in compliance with section 13.01(r)(6). *Palacios*, 46 S.W.3d at 880. Second, Repsher's report does not explain how the actions of Hargrove or the Health Center breached the applicable standard of care. Aside from stating that the defendants should have "recognized" imminent sepsis and "hospitalized" Ms. Villa, Repsher does not explain how each failed to meet the applicable standard of care. Again, his statements are conclusory and, thus, do not meet the requirements of section 13.01. Finally, Repsher's report fails to properly address the element of causation as it applies to this case. The Villas' expert does not link the actions of Hargrove or the Health Center to Ms. Villa's death. As such, the June 12th report is inadequate.

In addition, the June 12th report does not mention Dr. Hargrove by name, but, instead, refers only to the Brooks Family Health Center. The Villas contend this reference, read in conjunction with medical records which were attached to the report, leads to the inference that Repsher was including Hargrove in his opinion. As stated above, however, the only information relevant to a section 13.01 analysis is the report itself. Tex.Rev.Civ. Stat. Ann. art. 4590i § 13.01(*l*); *Palacios*, 46 S.W.3d at 878. Therefore, the report failed to place Hargrove on notice of the Villas' claims against him.

Because the Villas' June 12th report does not meet the requirements of § 13.01(r)(6), the trial court did not abuse its discretion in dismissing the case with

prejudice as provided in the statute. We overrule the Villas' first issue.

### EQUAL PROTECTION AND DUE PROCESS

In their second and third issues, the Villas contend their constitutional rights to equal protection and due process have been violated through the application of the *Palacios* ruling to their case. They cite no authority for their contention and are unclear in defining exactly why they believe their constitutional rights have been violated. The Villas assert the *Palacios* opinion does not apply to them because (1) it became final after their first expert report was filed, (2) the standard of review used in *Palacios* is a constitutional violation, in general, and (3) the standard of review used in *Palacios* deprives them, in particular, "especially the minor plaintiff," of their individual constitutional rights. The Villas also complain of the fact that Hargrove and the Health Center waited to file their motions to dismiss until after the statutory 180 days had passed. We will address each of these points in order.

The Villas filed their claims against Hargrove and the Health Center on April 6, 2001. The Texas Supreme Court decided *American Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.2001), on May 10, 2001. Rehearing was overruled on June 28, 2001. First, the Villas argue the tenets of *Palacios* should not be retroactively applied to them because they filed their expert report before that decision became final. It appears, from their brief, as though the Villas understand *Palacios* as creating new law. This is an erroneous interpretation. *Palacios* is best viewed as a case of statutory interpretation rather than one of court-made law. Article 4590i went into effect several years before the Villas filed their claim. *Palacios* simply reiterates the law

codified in section 13.01 and provides the court's interpretation as to the standard of review to be utilized when examining a report under the statute. *Id.* at 877. Additionally, the Villas fail to cite any case law to support their contention that the law set out in *Palacios* is inapplicable to their situation.

The Villas also challenge the constitutionality of the application of an abuse of discretion standard of review, both generally and as applied to their own specific situation. Again, however, the Villas fail to cite supporting law or to explain exactly how this standard violates either the Texas or United States Constitution, thus, failing to present anything for review. Any argument regarding the statute of limitations applicable to a minor in a wrongful death case also seems misplaced. The minor in the case at hand filed suit before her eighteenth birthday, thereby negating any limitations arguments. In addition, the current dismissal is not based on the statute of limitations, but on the plaintiffs' failure to meet the statutory requirements for a medical malpractice expert report.

Finally, the Villas make several remarks regarding both Hargrove and the Health Center's "stealth(y)" decision to wait until the 180 day period for filing an expert report had run to file their motions to dismiss. They claim the "unequal, disproportionate and deliberate timing" of the defendants resulted in an unequal application of the law. Again, the Villas do not cite any authority suggesting that either defendant had a duty to point out deficiencies in the expert report before the expiration of 180 days. *See Doades,* 94 S.W.3d at 673. Although the Villas contend the defendants' actions left them with no opportunity to correct any deficiencies in the report, they fail to address the two filing extension provisions provided by section 13.01.

First, under section 13.01(f), the trial court may, for good cause shown *after motion and hearing,* extend any time period specified in subsection (d) of this section for an additional 30 days. Tex.Rev. Civ. Stat. Ann. art. 4590i § 13.01(f) (emphasis added). The report must then be filed within 210 days of the date the lawsuit was filed. *Id.* The Villas filed no motion requesting an extension of time. However, following their argument, they would have had no reason to request an extension until the defendants filed their motions to dismiss. Hargrove filed his motion to dismiss on December 5, 2001, more than 210 days after the Villas filed suit, making § 13.01(f) inapplicable to the Villas situation. There is, however, a second extension provision which would have allowed the Villas to correct their report even after the 180 days had passed.

Section 13.01(g) provides the second extension, allowing the court the discretion to grant a 30 day grace period to a claimant who has failed to comply with a deadline established by subsection (d). Tex. Rev.Civ. Stat. Ann. art. 4590i § 13.01(g). In order to receive this additional time, the claimant must file a motion before any hearing on a motion by a defendant, and, after a hearing, the court must find the failure of the claimant was not intentional or the result of conscious indifference but the result of an accident or mistake. *Id.* Even if the Villas or their counsel were mistaken as to the expert report requirements under section 13.01, they had the opportunity, prior to the hearing on the defendants' motions to dismiss, to file their own motion, requesting the statutory grace period. *See Gutierrez v. Walker,* 50 S.W.3d 61, 64–65 (Tex.App.-Corpus Christi 2001, pet. granted).

Because the Villas failed to demonstrate any reason why the application of *Palacios* is a constitutional violation and because

Hargrove and the Health Center had no affirmative duty to inform the Villas of deficiencies in the report prior to the end of the 180–day period, we overrule the Villas' second and third issues.

The Villas' expert report does not meet the requirements of TEX.REV.CIV. STAT. ANN. art. 4590i § 13.01. In addition, the application of *Palacios* to the Villas' case is valid, violating neither the equal protection clause nor the due process clause of the Texas and United State Constitutions. We therefore affirm the judgment of the trial court.