Reversed and Rendered in Part and Reversed and Remanded in Part and
Memorandum Opinion filed November 1, 2007








Reversed and
Rendered in Part and Reversed and Remanded in Part and Memorandum Opinion filed November 1,
2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00365-CV

____________

 

MATTHEW G. MCMENEMY, M.D., Appellant

 

V.

 

DONALD M. HOLDEN AND MARY HOLDEN, Appellees

 



 

On Appeal from the 434th
Judicial District

Fort Bend County, Texas

Trial Court Cause No. 06-CV-151678

 



 

M E M O R A N D U M    O P I N I O N

In this health care liability action, Dr. Matthew G.
McMenemy appeals the trial court=s order overruling
his objections to an amended expert report and denying his motion to dismiss. 
Because the amended expert report does not constitute a good faith effort to
comply with section 74.351(r)(6) of the Texas Civil Practice and Remedies Code,
we reverse the trial court=s order, render judgment dismissing
appellees= claims with prejudice, and remand the case for
determination of reasonable attorneys= fees and costs.








I.  Factual and Procedural Background

Appellees Donald M. Holden (AHolden@) and his wife
Mary allege that on the evening of June 13, 2004, Holden suddenly lost the
vision in his left eye due to a central retinal artery occlusion (ACRAO@), which is a
blood clot blocking the artery leading to the eye.  About fifteen or twenty
minutes later, Holden arrived at Methodist Sugar Land Hospital, where he was
examined by Dr. Scott Rivenes.  Dr. Rivenes noted that Holden=s left eye could
only perceive light and general movement, and referred him to the hospital=s Aon call@ ophthalmologist,
appellant Matthew G. McMenemy, M.D.  

According to reports prepared by Holden=s retained expert,
Dr. Robert Lamberg, the nursing notes from the hospital reflect that Holden was
not taken to Dr. McMenemy=s office until 9:40 p.m., just over three
hours after the vision loss.  Dr. Lamberg further reported that, although the
nursing notes indicate that Holden returned from McMenemy=s office thirty
minutes later, there were no notes of services Dr. McMenemy rendered.  At 10:50
p.m., Holden signed a consent for the administration of Retavase and received
the first dose at 10:58 p.m.  There was no improvement in Holden=s vision, and he
was admitted to the hospital at 12:30 a.m. on June 14, 2004 under the care of
Dr. Anil B. Patel.  Tests revealed that Holden=s left carotid
artery was 40B50% occluded.  The visual loss persisted, and Holden
was discharged from the hospital on June 15, 2004.

On August 25, 2006, Holden sued Methodist Sugar Land
Hospital and Drs. McMenemy and Rivenes.[1] 
On December 20, 2006, the Holdens served Dr. McMenemy with Dr. Lamberg=s August 16, 2006
expert report.  Dr. McMenemy objected to the report and filed a motion to
dismiss on the grounds that the report failed to address Dr. Lamberg=s qualifications,
the standard of care, breach of the standard of care, and causation.








On January 19, 2007, the parties appeared before Judge
Vacek in the 400th Judicial District Court of Fort Bend County, and
Judge Vacek transferred the case to the 434th District Court.  On
January 25, 2007, Judge Wagenback sustained Dr. McMenemy=s objections and
gave the Holdens thirty days to the amend the expert report.

The Holdens produced an amended expert report on February
23, 2007.[2] 
Dr. McMenemy objected to the amended report on March 13, 2007 on the ground
that it failed to appropriately address causation.  The Holdens mailed a
response to Dr. McMenemy=s objections, but it was not received by
counsel before the hearing on April 2, 2007.  At the hearing, Judge Shoemake
denied the motion to dismiss.  This accelerated interlocutory appeal timely
followed.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 51.014(a)(9) (Vernon Supp. 2006).

II.  Issue Presented

In a single issue, Dr. McMenemy contends the trial court
abused its discretion by overruling his objections to the amended expert report
and denying his motion to dismiss.  He argues that dismissal is required
because the amended report is conclusory and speculative regarding causation
and therefore fails to satisfy the requirements of section 74.351(r)(6) of the
Texas Civil Practice and Remedies Code.  We agree.

III.  Analysis

A.      Expert
Report Requirements








This is
a health care liability lawsuit governed by chapter 74 of the Texas Civil
Practice & Remedies Code.  Tex. Civ. Prac. & Rem.
Code Ann. '' 74.001B.507 (Vernon 2005
& Supp. 2006).  Under these provisions, a claimant is required to produce
an expert report within 120 days of the date the claim was filed.[3] 
The expert report must provide: 

a fair summary of the expert=s opinions as of
the date of the report regarding applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.

Id. ' 74.351(r)(6). 
The trial court may grant a single 30-day extension to cure deficiencies in the
report.  Id. ' 74.351(c).  But Aif it appears to
the court, after hearing, that the report does not represent an objective good
faith effort to comply with the definition of an expert report in Subsection
(r)(6),@ then the court
shall grant a motion challenging the report=s adequacy.  Id. ' 74.351(l).  








Although an expert report Aneed not marshal
all the plaintiff=s proof, . . . it must
include the expert=s opinion on each of the elements
identified in the statute.@  Am. Transitional Care Ctrs. of Tex.,
Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (applying predecessor
statute).  When considering a motion to dismiss based on the inadequacy of an
expert report, A[t]he issue for the trial court is whether
>the report= represents a
good-faith effort to comply with the statutory definition of an expert report.@  Id.  To
constitute a Agood-faith effort,@ the report must
provide enough information to fulfill two purposes: (1) it must inform the
defendant of the specific conduct the plaintiff has called into question, and
(2) it must provide a basis for the trial court to conclude that the claims
have merit.  Id. at 879.  AA report that
merely states the expert=s conclusions about the standard of care,
breach, and causation does not fulfill these two purposes.  Nor can a report
meet these purposes and thus constitute a good-faith effort if it omits any of
the statutory requirements.@  Id.  In deciding whether this
standard is met, Aa trial court should look no further than
the report. . . . .@  Id. at
878.

B.      Standard
of Review

We review the trial court=s ruling for abuse
of discretion.  Estate of Regis ex rel. McWashington v. Harris County Hosp.
Dist., 208 S.W.3d 64, 67 (Tex. App.CHouston [14th
Dist.] 2006, no pet.); Doades v. Syed, 94 S.W.3d 664, 671 (Tex. App.CSan Antonio 2002,
no pet.).  A trial court abuses its discretion if it acts without reference to
any guiding principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241B42 (Tex. 1985).  A>Under this
standard, a reviewing court may not disturb the trial court=s resolution of
factual issues, even if the reviewing court would have decided the issue
differently, unless the resolution is shown to be arbitrary and unreasonable.=@  Doades,
94 S.W.3d at 671 (quoting Morrill v. Third Coast Emergency Physicians, P.A.,
32 S.W.3d 324, 327 (Tex. App.CSan Antonio 2000, pet. denied)).  Thus, A[a] trial court=s resolution of a
factual issue is arbitrary and unreasonable if the relator establishes that the
trial court could reasonably have reached only one decision.@  Morrill,
32 S.W.3d at 327 (citing Walker v. Packer, 827 S.W.2d 833, 831B40 (Tex. 1992)
(orig. proceeding)). 

But a trial court has no discretion in determining what the
law is or applying the law to the facts.  See Walker, 827 S.W.2d at 840
(failure by trial court to analyze or apply law correctly constitutes abuse of
discretion).  A trial court must grant a motion challenging the adequacy of an
expert report if the report does not represent an objective good faith effort
to comply with the definition of an expert report in subsection (r)(6).  Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(l).

C.      Conclusory
Statements of Causation 








We agree with Dr. McMenemy that under the law as properly
applied, the amended expert report does not constitute a good-faith effort to
satisfy the requirements of 74.351 and is instead speculative and conclusory
regarding the element of causation.  These deficiencies arise from the expert=s failure to
define Atimely@ application of
first aid and his failure to make any statements of probability.  

To place these deficiencies in context, we begin with Dr.
Lamberg=s description of
the standard of care and its breach: 

The standard of care for a patient who presents with a sudden and
painless loss of vision in one eye involves a rapid check for injury and
examination of the fundi.  Mr. Holden was diagnosed to have a CRAO.  The
standard of care for a patient diagnosed with a CRAO includes[:]

1)       Timely recognition of the signs and
symptoms of an occlusion in the eye, including limited light perception and
perception of movement.

2)       Timely and properly administering first aid
in an effort to break up the blood clot.

With respect to the initial treatment which could be
administered to a patient who presents with a CRAO, the following types of aid
could be employed: (1) massage of the eye globe to try to break up the
clot; (2) introduction of carbon dioxide by breathing into a paper bag to
try to dilate the retinal artery with increased CO2 in the blood; and (3)
application of topical beta blocker drops and/or Diamox IV to lower the
pressure in the eye.  Should these steps fail, then the ophthalmologist must
perform a paracentesis (puncture of the eye globe) to immediately lower the
pressure in the eye.








In the case of Mr. Holden, the medical records reveal that Dr. McMenemy
breached the standard of care for an ophthalmologist by not timely performing
first aid to the patient=s left eye, including the failure
to either massage the eye, or trying to lower the pressure in the eye by the
introduction of either CO2 or other topical drops, and then not performing a
paracentesis of that eye to lower the pressure in the eye to let the blood
pressure move the clot into the peripheral retina.  Over four hours had passed
since Mr. Holden first presented to the hospital complaining of a sudden loss
of vision in his left eye to the time an attempt was made to lyse the clot with
Retavase.  During that time, there were no attempts made to resuscitate the
stroke in the blind eye other than an application of the Retavase . . . . I
have personally treated patients who presented with the same or similar
circumstances as Mr. Holden, and have timely applied first aid to their CRAOs,
as well as performed paracenteses, with the patients having successfully
regained their eye sight, or never having fully lost their sight.  In my
opinion, if Dr. McMenemy had timely treated Mr. Holden in this manner, he could
have regained the sight in his left eye.

. . .

It is my opinion based on reasonable medical probability that Dr.
Matthew McMenemy fell below the standard of care for an ophthalmologist, and
was therefore negligent, as defined above,[[4]]
by his:

1)       Failure to timely and properly administer
first aid in an effort to break up the blood clot in Mr. Holden=s left eye.

2)       Failure to timely perform a paracentesis of
the left eye to immediately lower the pressure in that eye.

(emphasis
added).

The conclusory
statements in this amended expert report fail to provide a basis for the trial
court to conclude that the Holdens=s claims have
merit.  See Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52B53 (Tex. 2002)
(per curiam) (holding that causation was not established by statement that Aif the x-rays
would have been correctly read and the appropriate medical personnel acted upon
those findings then Wright would have had the possibility of a better outcome@).  Specifically,
we cannot determine from this report whether the opportunity for Atimely@ intervention was
still available at the time that Dr. McMenemy examined Holden, and whether it
was probable that performance of the first aid measures described would have
reversed Holden=s vision loss.

1.       No Definition of ATimely@

The Holdens argue
that the amended expert report adequately addresses timeliness in this passage:








Over four hours had passed since
Mr. Holden first presented to the hospital complaining of a sudden loss of
vision in his left eye to the time an attempt was made to lyse the clot with
Retavase.  During that time, there were no attempts made to resuscitate
the stroke in the blind eye other than an application of the Retavase.

(emphasis added). 
This statement commingles the time when Holden was under the care of Dr.
Riveness, Dr. McMenemy, and Methodist Hospital, but does not identify any point
at which Holden=s vision loss was reversible.  This
ambiguity is particularly problematic because the Holdens do not contend that
Dr. McMenemy had any opportunity to examine or treat Holden during the first
three hours after the onset of his symptoms.  But Dr. McMenemy=s failure to
perform first aid can only have been a cause of Holden=s injury if there
was a reasonable medical probability that Holden=s vision loss was
reversible at 9:40 p.m.  

In sum, the report
does not remedy the deficiency identified by the trial court when it gave the
Holdens the opportunity to file an amended report A[t]o specifically
state causation of plaintiff=s injuries with respect to the conduct of
Dr. McMenemy.@  Although the amended expert report contains Dr.
Lamberg=s opinion that
timely first aid could have reversed Holden=s vision loss,
nothing in the report indicates that Dr. McMenemy had the opportunity to render
Atimely@ assistance, or
defines Atimely@ to include the
period of time during which Holden was under Dr. McMenemy=s care.  The
amended expert report contains no indication that it is probable Holden would
have regained his sight if Dr. McMenemy had taken a particular action when he
saw Holden more than three hours after Holden first lost his sight. 
Significantly, the expert opined in his prior report: 

[Dr. McMenemy]
failed to provide the standard of care for the catastrophic central retinal
artery occlusion that presented within 2 hour of the
event.  While the outcome of the CRAO is variable, even when all of the above
steps are taken, there is still a significant percentage of eyes that
recuperate some level of useful vision even 24 hours after an artery occlusion.[[5]]








In amending his
original report to cure its deficiencies, Dr. Lamberg continued to avoid
expressing any opinion regarding the time at which Holden=s loss of vision
became permanent, or alternatively, whether Holden=s loss of vision
was permanent from the outset.  Although the report indicates that some
instances of CRAO respond to treatment, the report does not indicate that this
patient=s loss of vision
was curable at any time.  

2.       No Indication of
Probability

This leads us to
the second problem with the amended expert report: it contains no indication of
probability.  Dr. Lamberg =s amended report expresses no opinion
that, more than three hours after losing his sight, it was more likely than not
that Holden=s vision would be restored by any of the acts that Dr.
Lamberg identifies as required by the standard of care.  We do not imply that
an expert report is required to describe the causal relationship in terms of Areasonable medical
probability@ or other Amagic@ words.  Id.
at 53.  But regardless of the specific words used, a report must do more than
express a mere possibility.  Id.  

This is
particularly true when the patient complains of the health care provider=s failure to
reverse an impairment.  A[W]here preexisting illnesses or injuries
have made a patient=s chance of avoiding the ultimate harm
improbable even before the allegedly negligent conduct occursCi.e., the patient
would die or suffer impairment anywayCthe application of
these traditional causation principles will totally bar recovery, even if such
negligence has deprived the patient of a chance of avoiding the harm.@  Kramer v.
Lewisville Mem=l Hosp., 858 S.W.2d 397,
400 (Tex. 1993).  A[N]egligent conduct is a cause of harm to
another if, in a natural and continuous sequence, it produces an event, and without
the negligent conduct such event would not have occurred.@  Id. at
404 (emphasis added).  

At best, Dr.
Lamberg opined that Dr. McMenemy probably breached the standard of care, and
speculated that the breach caused Holden to lose some unquantified chance of
recovery.  Significantly, he does not conclude that it is more likely than not
that, absent Dr. McMenemy=s negligence, Holden would have recovered
his vision.








The Holdens
respond that Dr. Lamberg adequately addressed causation in his statement, AIn my opinion, if
Dr. McMenemy had timely treated Mr. Holden in this manner, he could have
regained the sight in his left eye.@  They argue that,
read in context, Dr. Lamberg=s statement that Holden Acould have@ regained sight is
the equivalent of a statement that it is Amore likely than
not@ that Holden would
have recovered.  We disagree. 

First, gaps in an
expert report may not be filled by Adrawing inferences
or guessing as to what the expert likely meant or intended.@  Austin Heart,
P.A. v. Webb, 228 S.W.3d 276, 279 (Tex. App.CAustin 2007, no
pet. h.).  Moreover, such an inference is contrary to the plain meaning of the
language used in the report.  The word Acould@ is the past tense
of Acan@ and is used as
the past or past conditional tense of Acan@ and in Athe auxiliary
function in the past tense and as an alternative to can suggesting less
force or certainty . . . .@  Merriam-Webster=s Third New Int=l Dictionary, 517 (Philip
Babcock Gove, ed., 3d ed., 1993). 








Because the word Acould@ expresses
uncertainty as to whether Holden=s sight was even
capable of restoration, the report cannot be read to imply that such
restoration was not merely possible, but probable.  And without some indication
of probability, however expressed, the expert report fails to indicate that the
Holdens= claims have
merit.  Cf. Gallardo
v. Ugarte, 145
S.W.3d 272, 279 (Tex. App.CEl Paso 2004, pet. denied) (AThe breach in the standards of care
by Sunset Haven Nursing Center, Dr. Adrian O. Ugarte, MD, and [Sunset=s medical director] caused the
death of Mr. Roberto Gallardo.@) (emphasis added); Estate of
Birdwell ex rel v. Texarkana Mem=l Hosp., Inc., 122 S.W.3d 473, 478 (Tex. App.CTexarkana 2003, pet. denied) (ABased upon reasonable medical
probabilities, it is my opinion that the nurses at Wadley and Dr. Malcolm Smith
deviated from the appropriate standard of care while treating Bessie Birdwell
and that this deviation from the appropriate standard of care was a cause of
Ms. Birdwell=s injuries . . . .@) (emphasis added); Moore v.
Sutherland, 107 S.W.3d 786, 790 (Tex. App.CTexarkana 2003, pet. denied) (AHad the diagnosis of bile peritonitis
been made before discharge from the hospital, treatment would have prevented
the patient=s death.@) (emphasis added); In re Barker, 110 S.W.3d 486, 489
(Tex. App.CAmarillo 2003) (A[I]t is my opinion, with a reasonable degree of medical
probability, that but for Dr. Barker=s negligence in diagnosis and treating and
obtaining timely neurosurgical consultation, Mr. Meissner=s subsequent neurological deficits
and long-term disability would have been avoided.@) (emphasis added).

Because the expert
report, as amended, does not constitute a good-faith effort to satisfy
statutory requirements, we sustain Dr. McMenemy=s sole issue on
appeal. 

IV.  Conclusion

We hold that the
Holdens have failed to satisfy the expert report requirements of Section 74.351
of the Texas Civil Practice and Remedies Code.  We therefore reverse the trial
court=s order of April
2, 2007 denying Dr. McMenemy=s second motion to dismiss, render
judgment dismissing the Holdens= claims against Dr. McMenemy with
prejudice, and remand the cause to the trial court for determination of Dr.
McMenemy=s reasonable
attorney=s fees and costs
of court in accordance with section 74.351(b) of the Texas Civil Practice and
Remedies Code.

 

                                                              

 

 

/s/      Eva
M. Guzman

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed November 1, 2007.

Panel consists of
Justices Yates, Fowler, and Guzman.









[1]  Dr. McMenemy does not contend that Holden=s claims are time-barred.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.251 (Vernon 2005) (imposing a two-year limitations
period on health care liability claims).





[2]  Although received on February 23, 2007, the report
is dated February 26, 2007.





[3]  Section 74.351(a) was amended in 2005 to substitute Athe original petition was filed@ for Athe claim was
filed@; however, this amendment applies only to a cause of
action that accrues on or after September 1, 2005. See id. ' 74.351(a) (Vernon Supp. 2006).





[4]  Dr. Lamberg used a definition of negligence that did
not require a finding of causation.  Although he also listed a definition of
proximate cause, he defined negligence only as failure to use ordinary care and
did not assert that this failure caused Holden=s vision loss to become permanent.





[5]  On appeal, all of the parties cite to both expert
reports.  In neither report does Holden attribute the three-hour delay in
treatment to Dr. McMenemy.