Court of Appeals
Fourth Court of Appeals District of Texas



# OPINION

No. 04-09-00403-CV

The **CITY OF SAN ANTONIO**,
Appellant/Cross-Appellee

v.

**KOPPLOW DEVELOPMENT**, Inc.,
Appellee/Cross-Appellant

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-08167
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:      Phylis J. Speedlin, Justice

Sitting:         Karen Angelini, Justice
                 Phylis J. Speedlin, Justice
                 Rebecca Simmons, Justice

Delivered and Filed:  November 3, 2010

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

In this statutory condemnation case, the City of San Antonio appeals a judgment rendered in favor of Kopplow Development, Inc., arguing the evidence is legally insufficient to support the jury's verdict awarding Kopplow remainder damages. Kopplow has also filed a cross-appeal in which it contends the trial court erred in excluding certain evidence. We affirm the trial court's judgment in part, and reverse the judgment in part and render judgment that Kopplow take nothing on its claim for remainder damages.

**BACKGROUND**

Kopplow Development owns approximately 18.451 acres of land at the southeast corner of the intersection of Culebra Road and NW Loop 410 in San Antonio. At or around the time Kopplow purchased the property, Kopplow also obtained a 16-foot wide non-exclusive utility easement and a 25-foot wide temporary construction easement from Southwest Research Institute, primarily to obtain gravity sewer service to its property.

As part of a public works project, the City of San Antonio planned and constructed the Regional Storm Water Detention Facility (the "Detention Facility" or "Detention Project") for the Leon Creek watershed located south of Kopplow's property. On January 16, 2004, the City obtained a 207.513-acre drainage easement from Southwest Research Institute to construct the Detention Facility. Kopplow's 16-foot wide non-exclusive utility easement and the City's drainage easement overlap. As part of the Detention Facility, the City constructed a concrete "inflow wall" across a portion of Southwest Research Institute's property where the two parties' easements overlap. In a ten-year storm, the inflow wall protects Kopplow's property from flooding. The inflow wall is 735 feet high. The lowest top bank elevation on Kopplow's property is 741 feet. The City constructed a 24-inch sleeve in the inflow wall to allow for extension of a future sewer line on Kopplow's property.

Aside from the inflow wall, the Detention Project also consists of two other components: a spillway and a large berm, or dam, located to the south of Kopplow's property. The berm is located approximately 1700 feet south of Kopplow's property, and is 748 feet at its maximum height. The City concedes that this berm may make Kopplow's property, a quarter of which is located in the 100-year floodplain, susceptible to flooding in the future. The following diagram

illustrates the locations of the various components of the Detention Facility and Kopplow's property.



On May 27, 2004, Kopplow filed an inverse condemnation suit against the City alleging that the entire Detention Facility would subject Kopplow's property to flooding in the event of a 100-year flood, and sought an injunction against the building of the inflow wall on Kopplow's non-exclusive easement. On June 25, 2004, the City filed its answer and counterclaim for statutory condemnation. The counterclaim for statutory condemnation solely concerns the construction of the inflow wall upon the 16-foot non-exclusive easement.

The case proceeded to a jury trial in March 2009. At trial, testimony was presented regarding the impact of the inflow wall on Kopplow's property. Robert Browning, the City's chief storm water engineer, testified that the purpose of the Detention Project was to detain storm water and reduce flooding downstream. He stated that the project consists of three independent components: the inflow wall; the emergency overflow spillway; and the protection berm. When asked whether the inflow wall causes Kopplow's property to flood in a 100-year flood,

Browning answered, "No, the inflow wall does not impact the floodplain line on his property." Browning added that although the project as a whole causes the level of the 100-year floodplain to be two feet higher on Kopplow's property, the inflow wall does not have anything to do with the potential flooding. He stated that the wall merely controls when the water enters the basin during a 100-year event. Browning stated that removing the inflow wall would have an impact on the downstream property, but not on Kopplow's property. Browning testified that it is the large berm that causes water to go on Kopplow's property during a 100-year flood, not the inflow wall.

Dennis Rion, a civil engineer whose firm assisted Kopplow in developing the land, testified that the purpose of the City's Detention Facility is to reduce the water surface elevation and potential flooding downstream. He stated that the effect of the Detention Project on Kopplow's property is an increase of 2.16 feet in elevation in a 100-year flood event. Rion stated there is "no doubt" that the increase of a 100-year storm on Kopplow's property is caused by the City's Detention Facility. On rebuttal, Rion was specifically asked what would happen if the City had not built the inflow wall. He answered, "[I]n a hundred year storm . . . it's intuitive to me that the water surface elevation on [Kopplow's] property wouldn't change much if that inflow wall was there or not, but it is a critical part of the detention pond."

Lynn Eckmann, a real estate appraiser, testified that the value of the easement taken by the City (on which the inflow wall was built) was $4,600. She also stated that the inflow wall did not damage the remainder of Kopplow's fee property. Eckmann elaborated that the 24-inch sleeve constructed in the inflow wall allowed Kopplow to extend its sewer line and develop its 18 acres. Eckmann stated that the storm water facility as a whole increased the ultimate development floodplain on Kopplow's property by 2.16 feet. She opined that if Kopplow

hypothetically had to fill the remainder property with two feet of fill, damages in the amount of $408,400 would be warranted. She assigned zero damages to Kopplow's remainder property based on the City's taking of the easement. Kopplow's appraiser, David Bolton, testified that the difference in value between the whole property before taking and the remainder after taking was $815,000.

The charge asked the jury three questions:

1. On June 25, 2004, what was the fair market value of the part taken?

2. Does the City's use of the part taken proximately cause damages to the remainder?

3. On June 25, 2004, what was the difference between the fair market value of the remainder before the taking and the fair market value of the remainder after the taking?

During deliberations, the jury sent the following note to the trial court:

Do we <u>have</u> to consider the inflow wall only (inflow wall/part taken) when answering #2; or do we consider the SW Regional Detention Facility as a whole? Or is this a question <u>we</u> (as the jury) have to answer.

The court instructed the jury to consider the evidence and instructions and to continue deliberating. The jury found that as of the date of the taking, the value of the part taken (*i.e.*, the inflow wall built across Kopplow's easement) was $4,600, that the use of the part taken was a proximate cause of damages to the remainder, and that the remainder had been damaged in the amount of $690,000. The trial court rendered judgment on the jury's verdict. The City moved for a new trial and for judgment notwithstanding the verdict (JNOV); the trial court denied the motion for JNOV, and the motion for new trial was overruled by operation of law. Both parties appealed.

**DISCUSSION**

The City brings four issues on appeal: (1) there is no evidence, or the evidence is factually insufficient, to support the jury's affirmative answer to Question No. 2 because the evidence is undisputed that the City's use of Kopplow's easement causes no damages to Kopplow's remainder; (2) because the evidence is undisputed that the City's use of Kopplow's easement causes no damages to Kopplow's remainder, the jury's answer to Question No. 3 can only be zero; (3) notwithstanding the first two issues, the *Campbell*[1] rule precludes remainder damages in the statutory condemnation case of Kopplow's easement; and (4) any claim for damages based on a claim of inverse condemnation is premature. We first address whether the evidence at trial was sufficient to support the jury's affirmative answer to Question No. 2.

*Standard of Review: Legal and Factual Sufficiency*

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing a legal sufficiency challenge, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807. Evidence is legally insufficient when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.* at 810. In a factual sufficiency review, we consider all the evidence supporting and contradicting the jury's finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set

---

[1] *Campbell v. United States*, 266 U.S. 368 (1924).

aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### *Damages to Kopplow's Remainder*

The Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made. . . ." TEX. CONST. art. I, § 17. When an entire tract of property is condemned, the landowner is entitled to payment of the local market value of the property. TEX. PROP. CODE ANN. § 21.042(b) (West Supp. 2010). When only a part of a person's property is taken, however, the constitution requires adequate compensation both for the part taken and "severance damages" to the remainder. *State v. Schmidt*, 867 S.W.2d 769, 772 (Tex. 1993). Accordingly, section 21.042(c) of the Property Code provides:

> If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property.

TEX. PROP. CODE ANN. § 21.042(c) (West Supp. 2010).

Severance damages are determined by "ascertaining the difference between the market value of the remainder of the tract immediately before the taking and the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put." *Schmidt*, 867 S.W.2d at 772 (quoting *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 197 (1936)). Severance damages are not recoverable, however, where "the diminution in value of the remainder [is] caused by the acquisition and use of adjoining lands of others for the same undertaking." *Schmidt*, 867 S.W.2d at 778 (quoting *Campbell v. United States*, 266 U.S. 368, 372 (1924)). The *Schmidt* court held that the "*Campbell* rule" should control unless the condemnee can show:

(1) the land taken from the condemnee landowner was indispensable to the . . . project;

(2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and

(3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the . . . project.

*Schmidt*, 867 S.W.2d at 778 (quoting *United States v. 15.65 Acres of Land*, 689 F.2d 1329, 1332 (9th Cir. 1982)).

In *Schmidt*, the State took a strip of frontage property from the landowners as part of a project to modify Highway 183 into a controlled access highway. *Id*. at 770-71. The project called for Highway 183 to be elevated, thereby reducing the visibility and convenience of access to the landowners' property. *Id*. at 771. The property owners claimed additional compensation for decreased market value of the remainder tract due to impaired visibility and accessibility. *Id*. at 772. The court denied recovery of severance damages, stating that the claimed diminution of value was due entirely to the State's modifications to Highway 183 and not to the use of the strip taken from the landowners. *Id*. at 778. The court further emphasized that although the parts taken were indispensible to the entire project, they did not constitute a substantial part of the property devoted to the project, and the damages resulting to the remaining tracts were not inseparable from those caused by the taking. *Id*. at 779. Therefore, the *Campbell* rule prevented the landowners from recovering severance damages. *Id*. at 778-79.

Here, the City maintains that the undisputed evidence refutes Kopplow's claim that the easement taken will cause the Kopplow property to flood an additional two feet in the event of a hypothetical 100-year flood. In support of its argument, the City relies on the testimony of Browning and Eckmann, who both unequivocally stated that the inflow wall did not cause damages to Kopplow's remainder property, and the testimony of Rion, who stated that the water

surface elevation on Kopplow's property would be the same in a 100-year storm whether or not the inflow wall was present. Both Browning and Rion stated that in a 100-year flood, the inflow wall would be underwater by ten feet, and would not hold any water in such an event. The City argues that in the face of such unequivocal evidence, the jury must have improperly considered the impact of the entire Detention Facility on Kopplow's remainder property when answering Question No. 2, as evidenced by its note to the trial court.

In addition, the City contends that the *Campbell* rule applies, and therefore prevents Kopplow from recovering severance damages. The City concedes that the easement taken was indispensible to the Detention Facility project; however, it maintains that the inflow wall is not a substantial part of the property devoted to the project and Kopplow's remainder damages are not inseparable from those caused by the taking. *See Schmidt*, 867 S.W.2d at 778. Because the entire Detention Project consisted of over 200 acres, the easement condemned by the City to build the inflow wall constituted a small fraction of the property devoted to the project. Moreover, the potential increased flooding to the remainder was caused by the berm, not the inflow wall. Thus, the City argues that Kopplow cannot meet its burden under the exception to the *Campbell* rule. *See id.*

Kopplow responds that it is entitled to severance damages because the condemnation caused special damage to its property that prevents development of the property without extensive reclamation. Kopplow contends that the instant situation is nearly identical to the facts in *State v. McCarley*, 247 S.W.3d 323 (Tex. App.—Austin 2007, pet. denied). In *McCarley*, the State took a "corner clip" consisting of 836 square feet from the landowner for a highway expansion project. *Id.* at 328. The evidence at trial demonstrated that the taking altered the drainage on the remainder property and made it impossible for the landowner to obtain the

permits necessary to develop it. *Id*. at 324. The Austin Court of Appeals upheld the award of remainder damages, holding that the damages arose from the use of the corner clip itself, and not from the State's use of the existing right-of-way or other property. *Id*. at 330.

We find *McCarley* distinguishable, however, because in that case the evidence clearly showed that the part taken caused damages to the remainder property. *See id.* In contrast, after reviewing the evidence in this case, it is undisputed that the part taken did not cause damages to Kopplow's remainder property. Thus, we agree with the City that the evidence is legally insufficient to support the jury's affirmative answer to Question No. 2. *See City of Keller*, 168 S.W.3d at 810 (evidence is legally insufficient when the record discloses a complete absence of evidence of a vital fact). Further, we agree that pursuant to *Campbell*, Kopplow is not entitled to compensation for the potential damage to the uncondemned portion of its property resulting from the berm, because the berm is not on land acquired from Kopplow by condemnation. *Schmidt*, 867 S.W.2d at 778-79. Accordingly, we sustain the City's first issue, and reverse the award of remainder damages to Kopplow.

We next address the City's contention that Kopplow's inverse condemnation claim is premature. Although Kopplow plead for damages for inverse condemnation, it now contends that a separate inverse action was not appropriate or necessary in light of the already pending statutory condemnation proceeding because it was entitled to recover for all reasonably foreseeable damages naturally flowing from the statutory condemnation action. *See City of La Grange v. Pieratt*, 142 Tex. 23, 175 S.W.2d 243, 246 (1943) ("In a proceeding for the condemnation of a part of a tract of land for street or road purposes, it is presumed that the amount of damages allowed covers all lawful elements of damages, whether direct or consequential, that could reasonably have been foreseen and determined at the time of

condemnation; and where a part of a tract of land is condemned for street or road purposes, the owner cannot recover in a subsequent proceeding for consequential damages to the remainder of the land which he ought reasonably have foreseen and presented in the condemnation proceeding."). Assuming Kopplow did pursue an inverse claim at trial,[2] the City contends that such a claim is not yet ripe, and can be pursued in the future. A "taking" by flooding is a specific type of inverse condemnation. In *Tarrant Regional Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004), the Texas Supreme Court held that isolated instances of increased flooding do not amount to a taking; rather, repeated increased flooding is required. The City argues that, to date, Kopplow's property has not flooded, and if it were to flood, Kopplow could seek legal redress at that time. *See Allen v. City of Texas City*, 775 S.W.2d 863, 866 (Tex. App.—Houston [1st Dist.] 1989, writ denied) ("A cause of action for damaging land does not lie for anticipated future damages that have not yet occurred, but accrues at the time land is actually damaged, and is governed by the two-year statute of limitations.").

Kopplow responds that it did not seek damages merely for future flooding, but also for the inability to develop its remainder property absent an expensive reclamation project, which constituted an injury that accrued prior to trial. Kopplow further contends that it cannot bring a valid inverse condemnation claim in the future if the property at issue was the subject of a previous, proper statutory condemnation action. *See Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 861-62 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

---

[2] "In an inverse-condemnation suit, a property owner seeks compensation for a taking that has allegedly already occurred and requests just compensation from the government. The general elements of an inverse condemnation are: '(1) an intentional act of a government entity; (2) accomplished for a public purpose; (3) that damages or takes property from a private citizen.'" *State, Tex. Water Development Bd. v. Hearts Bluff Game Ranch, Inc.*, 313 S.W.3d 479, 486 (Tex. App.—Austin 2010, pet. filed). "The essence of an inverse condemnation proceeding is that the government has intentionally taken or unreasonably interfered with an owner's use of property and the property owner is attempting to recover compensation for the lost or impaired rights." *State v. Brownlow*, No. 08-0551, 2010 WL 3365948, at *2 (Tex. Aug. 27, 2010).

We agree that Kopplow's inverse condemnation claim is premature. In order for flooding (and any reclamation associated with raising a floodplain) to amount to a physical taking, the flooding must be repeated. In *Howard v. City of Kerrville*, 75 S.W.3d 112, 117 (Tex. App.—San Antonio 2002, pet. denied), this court held that no physical taking had occurred where the construction of a dam raised the landowner's floodplain and subjected him to potential flooding. "In the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur." *Gragg*, 151 S.W.3d at 555. A single flood event does not generally rise to the level of a taking. *Id.* "The recurrence requirement assures that the government is not held liable for taking property when a project's adverse impacts, and by implication its benefit to the public, are too temporal or speculative to warrant compensation." *Id.*

Further, we are not persuaded that Kopplow is barred from bringing a subsequent inverse condemnation claim. The *Dahl* court held that the appellants' inverse condemnation claim was defective where the appellants' pleadings demonstrated that their inverse condemnation claim covered the *identical* property lawfully condemned by the State in a previous proceeding. *Dahl*, 92 S.W.3d at 862-63. Here, in contrast, the property for which Kopplow seeks remainder damages is *not* the *identical* property that was condemned by the City. As discussed earlier, the City took an easement on which to build the inflow wall, while Kopplow seeks compensation for damage to the remainder of his 18-acre fee property.

In conclusion, we affirm the portion of the trial court's judgment awarding Kopplow $4,600 as compensation for the part taken by the City. We reverse the portion of the trial court's

judgment awarding Kopplow $690,000 for remainder damages, and render judgment that Kopplow take nothing on its claim for remainder damages.

## CROSS-APPEAL

Kopplow presents two issues in its cross-appeal: (1) the trial court erred in excluding evidence of the value of the whole property before considering the benefit of Kopplow's vested right to develop the property in accordance with its existing site development permit; and (2) the trial court erred in submitting a proximate cause question, because compensability of remainder property damages is a question of law for the court. Due to our holding that the evidence is legally insufficient to support the jury's award of remainder damages, we conclude that any issue related to damages is moot. Because the City's use of the condemned property did not cause damages to Kopplow's remainder, there can be no compensation for damage to the remainder. Kopplow's issues on its cross-appeal are therefore overruled.

## CONCLUSION

Based on the foregoing analysis, we affirm the portion of the trial court's judgment awarding Kopplow $4,600 as compensation for the part taken by the City. We reverse the portion of the trial court's judgment awarding Kopplow $690,000 for remainder damages, and render judgment that Kopplow take nothing on its claim for remainder damages.

Phylis J. Speedlin, Justice