# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0104
════════════

KOPPLOW DEVELOPMENT, INC., PETITIONER,

v.

THE CITY OF SAN ANTONIO, RESPONDENT

════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
════════════════════════════════════════════════

**Argued September 13, 2012**

JUSTICE GUZMAN delivered the opinion of the Court.

In this case we determine whether an inverse condemnation claim is premature when premised on the owner's inability to develop its property as the city previously approved. The landowner purchased the property for the purpose of developing the land, obtained permits, and filled the portion of the property at issue in this proceeding to the 100-year flood level. The municipality then constructed a facility partly on the property that would detain storm water on the property in a significant flood, thus causing the property to again be below the 100-year flood level and undevelopable without additional fill. The landowner sought damages under statutory and inverse condemnation theories. The jury awarded damages of $694,600 and the trial court entered judgment on the verdict. The court of appeals reversed as to the inverse condemnation claim, holding the claim was premature because the property had not yet flooded. Because we conclude

that the landowner's claim is for the present inability to develop the property as previously approved unless the property is filled, we hold the claim is not premature. Accordingly, we reverse the judgment of the court of appeals and remand to the court of appeals for further proceedings.

## I. Background

Kopplow Development, Inc. (Kopplow) purchased 18.451 acres of land adjoining Loop 410 in San Antonio in 1996 or early 1997.[1] After retaining an engineering firm, Kopplow filed a plat application on November 27, 1996 and obtained utility and construction easements on the adjoining tract south of its property to connect sewer service. Because Kopplow's property was below the 100-year floodplain elevation of 741 feet above mean sea level, as defined by the Federal Emergency Management Agency (FEMA), Kopplow obtained a floodplain permit from the City of San Antonio (City) and filled most of the property to 741 feet in 2000. About one fourth of the property still fell within the 100-year floodplain, and Kopplow dedicated a drainage easement over this area. In 2004, the City granted Kopplow a vested rights permit, allowing it to develop the property under the rules in effect in November 1996 when Kopplow filed its plat application. A vested rights permit insulates pending development from most future ordinance changes. But certain floodplain regulation changes apply retroactively even against vested rights holders. *See* TEX. LOC. GOV'T CODE §§ 245.002, 245.004(9).

---

[1] The record does not reflect when Kopplow acquired the property. Company president Edward Kopplow testified that Kopplow acquired the property "in 1996. It might have been early '97." Kopplow's plat application of November 27, 1996 lists it as the owner. Kopplow originally purchased a larger tract and sold two portions to develop as restaurants in early 1997.

San Antonio experienced 100-year floods in 1998 and 2002. The City then planned a regional storm water detention facility for the Leon Creek watershed south of Kopplow's property to mitigate downstream flooding. It determined in 2002 that the project would inundate portions of Kopplow's property and the tract south of Kopplow's property. The City asked Kopplow in late 2003 to donate an easement that the City planned to inundate as part of the project. Kopplow refused. The City obtained a 207-acre drainage easement from the owner of the property south of the Kopplow tract in January 2004 and then built a concrete in-flow wall on the portion of the adjoining tract that includes Kopplow's easements (where Kopplow's easements and the City's drainage easement overlap on the property south of the Kopplow tract). The City also built a large berm or dam south of the Kopplow property. The dam's peak elevation is 748 feet. Once Leon Creek reaches the height of the in-flow wall in a 10-year flood, the wall will guide storm water to be detained by the berm until storm water in Leon Creek subsides, allowing drainage pipes in the berm to open and slowly return the detained water into Leon Creek.

The parties agree the facility will cause increased inundation on Kopplow's property and that the FEMA 100-year floodplain is two feet higher on Kopplow's property because of the facility. But the City asserts that the in-flow wall does not cause the increased inundation because it is under water in a 100-year flood and instead that the berm causes the increased inundation.

The City also changed its regulatory 100-year floodplain to account for future, upstream development.[2] A City representative testified that, although Kopplow must file for a floodplain

_____

[2] By contrast, FEMA's 100-year floodplain accounts for only existing conditions.

3

development permit to further develop its property, the City will permit Kopplow to develop its property if it fills the property to the new level of the 100-year floodplain. Ultimately, Kopplow must fill the portion of its property to be developed from the existing 741-foot level to 745.16 feet: two feet due to the detention facility and two feet due to the City's ordinance change.

Kopplow sued the City for a taking in May 2004 while it was constructing the facility. The City counterclaimed for condemnation of Kopplow's easement. Before trial, the trial court granted the City's motion that Kopplow's vested rights permit was not effective against subsequent floodplain ordinances and excluded Kopplow's evidence pertaining to two of the four feet of additional fill needed to develop the property.[3] The jury found that: (1) the value of the part taken was $4,600; (2) the City's use of the part taken proximately caused damages to the remainder; and (3) Kopplow's remainder damages were $690,000.

The City and Kopplow both appealed. The court of appeals affirmed the $4,600 damage award for the part taken under the statutory takings claim. 335 S.W.3d 288, 296. It reversed the award of remainder damages under the statutory takings theory, holding that the inflow wall would not inundate Kopplow's property, even during a 100-year flood. *Id.* at 294–95. The court also held the remainder damages unrecoverable under Kopplow's inverse condemnation theory because the property had not yet flooded and the inverse condemnation claim was therefore premature. *Id*. at

---

[3] *See* TEX. LOC. GOV'T CODE § 245.004(9) (vested rights do not apply against "regulations to prevent imminent destruction of property or injury to persons from flooding that are effective only within a flood plain established by a federal flood control program and enacted to prevent the flooding of buildings intended for public occupancy").

296. In light of its holding, the court of appeals did not reach the City's factual sufficiency challenge or Kopplow's two cross-appeal points.[4] *Id*. at 296–97.

## II. Discussion

We have described the right to own private property as "fundamental, natural, inherent, inalienable, not derived from the legislature and as preexisting even constitutions." *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977). One of the most important purposes of our government is to protect private property rights. *Id*. The Texas Constitution resolves the tension between private property rights and the government's ability to take private property by requiring takings to be for public use, with the government paying the landowner just compensation. TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ."). The United States Supreme Court has stated that the rationale for compensating landowners for takings for public use is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). When only part of a tract is taken, Texas law assures just compensation by entitling the landowner to the value of the part taken as well as the damage to the owner's remaining property. TEX. PROP. CODE § 21.042(c).

Takings may be categorized as either statutory (if the government compensates the owner for the taking) or inverse (if the owner must file suit because the government took, damaged, or

---

[4] Kopplow asserted that: (1) Kopplow's vested right to develop the property meant that the trial court erred in excluding evidence of the value of the entire property; and (2) the trial court erred by including a proximate cause question. 335 S.W.3d at 296.

destroyed the property without paying compensation). *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). This proceeding has involved statutory and inverse claims. Initially, Kopplow sued because the City did not admit to damaging the property, which sounds in inverse condemnation. 335 S.W.3d at 291. The City later counterclaimed for a statutory taking, admitting it had taken Kopplow's easement. *Id.*

## A. Waiver

The City contends, and the court of appeals held, that Kopplow's inverse condemnation claim is not yet ripe. We disagree. As an initial matter, the City asserts that Kopplow did not plead or try an inverse condemnation claim. But Texas is a notice pleading jurisdiction, and a "petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). The City responded to Kopplow's pleading by asserting that Kopplow's claim was not yet ripe (a response to an inverse condemnation claim) and the inverse condemnation claim failed because there was no intentional taking. The City moved for summary judgment on Kopplow's claim, stating that Kopplow alleges that "the City has inversely condemned a portion of its . . . property" but that "there is no evidence to support Plaintiff's claim for inverse condemnation." The City's subsequent motion for summary judgment stated: "[t]his is an inverse condemnation case wherein Plaintiff's damages are based on the increase in the flood plain elevation on its property . . . ." The City also specially excepted to the inverse condemnation claim, TEX. R. CIV. P. 90, but it failed to obtain a ruling before the case was submitted to the jury. In sum, the City understood Kopplow was pleading an inverse condemnation claim and

6

prepared the defense that the claim was not yet ripe but failed to obtain a ruling on its special exception. *See Roark*, 633 S.W.2d at 810 (party waived pleading defect issue by failing to specially except).

Kopplow also pursued the claim at trial and on appeal. The City asserted at the pre-trial conference that Kopplow must decide whether to proceed on the statutory or inverse claim but failed to obtain a specific ruling from the trial court that Kopplow could not proceed on the inverse claim. In the court of appeals, Kopplow noted that, "[t]o the extent that Kopplow's damage claim could be correctly characterized as an inverse condemnation claim, the [trial] Court found as a matter of law that the claim was compensable." Kopplow maintained the position in this Court that its claim was both statutory and inverse in nature. We conclude Kopplow preserved its inverse condemnation claim.

### B. Ripeness

Substantively, the court of appeals held that, to the extent Kopplow's claim was for inverse condemnation, it was premature. 335 S.W.3d at 296. The court of appeals relied primarily on *Tarrant Regional Water District v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). *Gragg* involved a water supply reservoir that the Tarrant Regional Water District built. *Id*. at 550. Heavy rains caused the District to open the reservoir floodgates in 1990, extensively flooding the Gragg Ranch. *Id*. at 550. Gragg sued for inverse condemnation, and by the time the case was tried in 1998, the ranch had experienced a large number of floods. *Id*. The District argued that the reservoir did not add more downstream water than would naturally pass through, and if it did, it was mere negligence and there was not sufficient intent to support an inverse condemnation claim. *Id*. at 554.

7

We observed that mere negligence that eventually contributes to property damage will not qualify as a taking, primarily because the public would bear the burden of paying for damage for which it receives no benefit. *Id*. at 554–55. We also noted that, "[i]n the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur." *Id*. at 555. We held that, "[w]hile nonrecurrent flooding may cause damage, a single flood event does not generally rise to the level of a taking" because "its benefit to the public, [is] too temporal or speculative to warrant compensation." *Id*.

In a companion case, we clarified that "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Id*. (citing *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004)). With flood water impacts, recurrence is a probative factor in assessing intent and the extent of the taking. *Id*. We rejected the District's argument that it was, at most, only negligent and found some evidence to support the taking because the reservoir changed the character of the flooding on the Gragg Ranch to make the flood waters arrive sooner, flow faster and more forcefully, and last longer. *Id*. We observed this could be attributable to the reservoir's ability to hold only eight percent excess storage, compared to twenty-five to one hundred percent for other reservoirs. *Id*. at 556.

In *Gragg*, we reaffirmed a statement we made over 50 years ago:

[g]overnmental agencies and authorities are necessities. They are capable of rendering great and beneficent public services. But any appeal to the tradition of our laws which omits a decent regard for private property rights is both inaccurate and distorted. It is because of this regard that our governmental agencies and authorities in acquiring properties for their public purposes are generally required to proceed

8

under the power of eminent domain rather than under the police power. Such a policy has not resulted in a destruction of flood control and improvement agencies in the past and there is no reason to apprehend that the continuation of such policy will prove overly costly or inimical to the American way of life in the future.

*Id*. at 556 (quoting *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 107 (Tex. 1961)).

Our holding in *Gragg* does not, as the court of appeals concluded, compel a holding here that Kopplow's inverse condemnation claim is premature. The focus of *Gragg* is that the government's negligent acts that result in an occasional flood do not benefit the public and cannot qualify as a taking. *Id*. at 555. The governmental entity in *Gragg* intentionally constructed a reservoir with minimal overflow capacity, and the frequent flooding at the ranch indicated this was not mere negligence. *Id*. at 556. Here, we need not look to evidence of the frequency of flooding to deduce the government's intent: the City knew the project would inundate part of Kopplow's property before it ever began construction, prompting the City to seek a drainage easement from Kopplow. The project would only result in one tract other than Kopplow's being below the 100-year flood level, and the City obtained a drainage easement for the applicable portion of that tract. Based on these facts, there is little dispute that the City intended to take Kopplow's property for the project, and *Gragg* does not bar the inverse condemnation claim. *Id*. at 555; *Jennings*, 142 S.W.3d at 314.

The court of appeals also relied on *Howard v. City of Kerrville*, 75 S.W.3d 112 (Tex. App.—San Antonio 2002, pet. denied), to support its holding that Kopplow's inverse condemnation claim is not yet ripe. 335 S.W.3d at 296. In *Howard,* a flood destroyed a dam, which the city rebuilt with the same specifications. 75 S.W.3d at 115. But the earlier FEMA floodplain maps did not account for the impact of the dam or increased flow in the Guadalupe River. *Id*. The new flood level

9

was above the level to which Howard had previously filled his property. *Id*. At various times during city regulation changes, Howard filed and withdrew applications to develop the property and later sued, in part, for a regulatory taking. *Id*. at 116. The court of appeals held that Howard's regulatory takings claim was not ripe because he had no application on file and the court could not determine what use he sought and what uses the city would or would not allow. *Id*. at 118. In contrast, here, there was undisputed testimony that Kopplow sought to develop its property pursuant to the previously approved plat and that the City would require Kopplow to fill its property to 745.16 feet to so develop it. Unlike the record in *Howard*, on this record, we are able to determine whether the municipality will approve the use the landowner seeks.

The City further contends that Kopplow's inverse condemnation claim is not yet ripe under *Westgate*, 843 S.W.2d at 453. There, Westgate, Ltd. (Westgate) completed construction of commercial buildings shortly before the government announced plans to build a highway at a route directly through one of the new buildings. *Id*. at 450. Westgate was having difficulty leasing the space in light of the proposed roadway. *Id*. at 450–51. When the government brought statutory takings proceedings, Westgate counterclaimed for inverse condemnation to recover its lost profits accrued before the government acquired the property. *Id*. at 451. The trial court awarded Westgate $2,734,000 for the statutory takings claim as the difference in value of Westgate's entire tract before and after the taking. *Id*. It also awarded Westgate $633,000 in lost profits for its inverse condemnation claim. *Id*. We affirmed the reversal of the award of lost profits under the inverse condemnation claim because the government's proposed taking was not a direct restriction on Westgate's property before it actually acquired the property. *Id*. at 452–53.

10

We cited approvingly in *Westgate* two court of appeals cases where a future loss of property did not give rise to a present takings claim. *Id*. at 452–53. Both *Allen v. City of Texas City*[5] and *Hubler v. City of Corpus Christi*[6] involved city drainage systems that rendered the owners' properties more susceptible to flooding. *Westgate*, 843 S.W.2d at 453. In *Allen*, a class of plaintiffs affected by a levee pleaded an inverse condemnation claim, alleging the levee diminished the value of their land and made it more susceptible to flooding. 775 S.W.2d 863, 864 (Tex. App.—Houston [1st Dist.] 1989, writ denied). The *Allen* court disallowed the claim because no flooding had occurred and the government had not otherwise appropriated the property. *Id*. at 865. In *Hubler*, the plaintiff asserted that the combined effect of a current drainage project and several proposed others would increase the surface waters on his land and that the city should have taken a drainage easement. 564 S.W.2d 816, 821 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.). The *Hubler* court disallowed the claim because no flooding had occurred as a result of the completed projects. *Id*.

Reliance on *Allen* and *Hubler* is misplaced because they address when an inverse condemnation claim for flooding is premature. Kopplow's claim is about development, not flooding. Kopplow purchased the property to develop it, obtained development permits (including a vested rights permit), and filled the property to the 100-year flood level to develop it before the City constructed the project that rendered the land undevelopable unless filled again. Even if the Kopplow property never actually floods, the property is nonetheless undevelopable unless filled because of the project. The direct, immediate restriction on Kopplow's property is that it can no

---

[5] 775 S.W.2d 863 (Tex. App.—Houston [1st Dist.] 1989, writ denied).

[6] 564 S.W.2d 816 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.).

longer develop the property as previously approved, and, on these facts, a lack of ripeness does not bar Kopplow's inverse condemnation claim.

We next address two remaining questions: (1) whether proximate cause affects the inverse condemnation claim, and (2) whether the damages awarded by the jury are recoverable under the inverse condemnation claim. Here, the charge asked the jury whether the use of the part taken proximately caused damage to the remainder. The jury answered in the affirmative. The City challenged the sufficiency of the evidence supporting that answer on appeal, arguing that the use of the part taken was for the in-flow wall only and would not impound flood waters on Kopplow's remainder. 335 S.W.3d at 292. A proximate cause question is properly submitted in a partial statutory takings case where the parties dispute whether the use of the part taken damaged the remainder. *State v. Petropoulos*, 346 S.W.3d 525, 531 (Tex. 2011). Moreover, causation is still relevant in an inverse condemnation claim: owners of inversely condemned property cannot recover damages the government did not cause. *See Gragg*, 151 S.W.3d at 555 (holding that the government need not pay even for negligent takings because they do not benefit the public). But while causation in a partial statutory taking focuses on whether the use of the part taken damaged the remainder, causation in an inverse condemnation focuses on the extent of the government's restriction on the property. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012).

Even if the City's challenge to the sufficiency of the evidence also applies to Kopplow's inverse condemnation claim, it would be legally insignificant as the parties agree that the berm will impound flood waters on Kopplow's property in a 100-year flood, causing the property to again be below the 100-year flood level. Likewise, the parties agree that Kopplow must fill its property to

12

the new 100-year flood level in order to develop it as previously approved. Thus, there is no dispute as to causation for Kopplow's inverse condemnation claim.

Moreover, the damages the jury awarded are proper for Kopplow's inverse condemnation claim. The damages the jury found for the easement ($4,600)[7] and the remainder of Kopplow's property ($690,000) are recoverable under the inverse condemnation claim, and Kopplow submitted a single question that would have resulted in this amount. *See Westgate*, 843 S.W.2d at 457 (holding broad form condemnation charges should ask the difference in value of the property before and after the taking). Instead, the City requested, and the trial court approved, a separate question for damages for the easement and the remainder of the property. It was not harmful error under our Rules and precedent to charge the jury here separately as to the damages for the easement under the statutory takings claim and the remainder of the property under the inverse condemnation claim because the ultimate result was the same. *See id.* at 451 (damages to property and lost profits pled under separate theories), 457 (level of recovery for condemnation is the difference in value of the property before and after the taking). Accordingly, because Kopplow's inverse condemnation claim is ripe and was not waived, it supports the $690,000 damage award.

### III. Conclusion

Kopplow purchased the property to develop it, obtained floodplain and vested rights permits, and filled the property to the 100-year flood level before the City built a flood control project partly on its property to detain storm water on the property. That project prevents Kopplow from

---

[7] The trial court entered judgment on this award, and the court of appeals affirmed. 335 S.W.3d at 297. Neither party challenges that ruling here.

13

developing the property as planned unless it fills it to the new 100-year flood level. Kopplow's inverse condemnation claim sought damages for the fill. The fact that flooding has not yet occurred does not render the claim premature because the claim is based on the thwarting of approved development, not flooding. We thus conclude the award of remainder damages is recoverable under Kopplow's inverse condemnation claim. In light of the court of appeals' ruling, it failed to reach Kopplow's cross-appeal point that the trial court erred in excluding some of the evidence of the cost of the fill. Accordingly, we reverse the judgment of the court of appeals and remand to the court of appeals for further proceedings consistent with this opinion.

_____
Eva M. Guzman
Justice

OPINION DELIVERED:   March 8, 2013

14