

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION ON REMAND

No. 04-09-00403-CV

**THE CITY OF SAN ANTONIO**,
Appellant/Cross-Appellee

v.

**KOPPLOW DEVELOPMENT, INC**.,
Appellee/Cross-Appellant

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-08167
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:      Karen Angelini, Justice
          Rebeca C. Martinez, Justice
          Patricia O. Alvarez, Justice

Delivered and Filed:  February 5, 2014

REVERSED AND REMANDED

        This case is before us on remand from the Supreme Court of Texas. *See Kopplow Dev.,
Inc. v. City of San Antonio*, 399 S.W.3d 532 (Tex. 2013). The underlying lawsuit involves an issue
of statutory condemnation. *See City of San Antonio v. Kopplow Dev., Inc*., 335 S.W.3d 288 (Tex.
App.—San Antonio 2010). The City of San Antonio embarked on a project to reduce downstream
flooding. As part of this particular project, the City built a permanent, concrete inflow wall across
an easement owned by Kopplow Development. Kopplow, therefore, sued the City for a taking.
The City counterclaimed for condemnation of Kopplow's easement. Prior to trial, the parties

presented opposing motions concerning admissibility of evidence on the effect to be given the vested rights established for the Kopplow property before the taking. The trial court denied Kopplow's request to admit evidence regarding its vested rights status, and ruled that testimony from Kopplow's experts could not include consideration of the benefit of being vested from the requirements of the City's new stormwater standards. The jury ultimately found that the value of the part taken was $4,600, the use of the part taken was a proximate cause of damages to the remainder, and the remainder was damaged in the amount of $690,000. The City and Kopplow both appealed.

On original submission, a panel of this court affirmed the damage award for the part taken under the statutory takings claim. 335 S.W.3d at 296. We reversed the award of remainder damages under the statutory takings theory, holding that the inflow wall would not inundate Kopplow's property, even during a 100-year flood. *Id.* at 294-95. We additionally held the remainder damages unrecoverable under Kopplow's inverse condemnation theory because the property had not yet flooded and the inverse condemnation claim was therefore premature. *Id.* at 296. In light of our holding, we did not reach Kopplow's cross-appeal point that its vested right to develop the property meant that the trial court erred in excluding evidence of the value of the entire property. *Id.* at 296-97. That is the issue currently before us. Because we hold that the trial court erred in excluding evidence of Kopplow's vested rights status, we reverse the judgment of the trial court, and remand the case to the trial court for a new trial on the issue of damages consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Kopplow purchased 18.451 acres of land adjoining Loop 410 in San Antonio. *Kopplow*, 399 S.W.3d at 534. After retaining an engineering firm, Kopplow filed a plat application in November 1996 and obtained utility and construction easements on the adjoining tract south of

its property to connect sewer service. *Id.* Because Kopplow's property was below the 100-year floodplain elevation of 741 feet above mean sea level, as established by the Federal Emergency Management Agency (FEMA), Kopplow obtained a floodplain permit from the City and filled most of the property to 741 feet in 2000. *Id.* About one fourth of the property still fell within the 100-year floodplain, and Kopplow dedicated a drainage easement over this area. *Id.* In 2004, the City granted Kopplow a vested rights permit, allowing it to develop the property under the rules in effect in November 1996. *Id.* A vested rights permit insulates pending development from most future ordinance changes, although certain floodplain regulation changes apply retroactively even against vested rights holders. *Id.* (citing TEX. LOC. GOV'T CODE ANN. §§ 245.002, 245.004(9) (West 2005)).

San Antonio experienced 100-year floods in 1998 and 2002. *Kopplow*, 399 S.W.3d at 534. *Id.* The City then planned a regional storm water detention facility for the Leon Creek watershed south of Kopplow's property to mitigate downstream flooding. *Id.* It determined in 2002 that the project would inundate portions of Kopplow's property and the tract south of Kopplow's property. *Id.* The City asked Kopplow in late 2003 to donate an easement that the City planned to inundate as part of the project. Kopplow refused. *Id.* The City obtained a 207-acre drainage easement from the owner of the property south of the Kopplow tract in January 2004 and then built a concrete in-flow wall on the portion of the adjoining tract that includes Kopplow's easements. *Id.*

By this time, the City had changed its regulatory 100-year floodplain to account for future, upstream development. *Id.* The City's new minimum flood plain elevation was 745.16 feet msl. FEMA's 100-year floodplain of 741 feet, by contrast, accounts for only existing conditions. Ultimately, Kopplow must fill the portion of its property to be developed from the existing 741-foot level to 745.16 feet: two feet due to the new detention facility and two feet due to the City's ordinance change. *Id.* at 535.

In May 2004, Kopplow sued the City for a taking while it was constructing the facility. *Id*. The City counterclaimed for condemnation of Kopplow's easement. *Id*. Before trial, the trial court granted the City's motion that Kopplow's vested rights permit was not effective against subsequent floodplain ordinances and excluded Kopplow's evidence pertaining to two of the four feet of additional fill needed to develop the property. *Id*. (citing TEX. LOC. GOV'T CODE ANN. § 245.004(9) (West 2005)). As a result, Kopplow was not permitted to present evidence regarding the cost to fill the property from 741 feet to 743 feet. Kopplow's experts testified in a bill of exception regarding the cost to fill the entire property. The jury found that: (1) the value of the part taken was $4,600; (2) the City's use of the part taken proximately caused damages to the remainder; and (3) Kopplow's remainder damages were $690,000. *Id*.

The City and Kopplow both appealed. *Id*. As stated earlier, this court affirmed the damage award for the part taken under the statutory takings claim, but reversed the award of remainder damages. *Kopplow*, 335 S.W.3d at 294-96. We also held the remainder damages unrecoverable under Kopplow's inverse condemnation theory because the property had not yet flooded and the inverse condemnation claim was therefore premature. *Id.* at 296. In light of our holding, we did not reach Kopplow's cross-appeal point that its vested right to develop the property meant that the trial court erred in excluding some of the evidence of the cost required to fill the property from 741 feet to 743 feet. *Id.* at 296-97.

Petition for review was granted by the Supreme Court of Texas. The Supreme Court held that the fact that flooding has not yet occurred does not render Kopplow's inverse condemnation claim premature because the claim is based on the thwarting of approved development, not flooding. *Kopplow*, 399 S.W.3d at 540. It thus concluded the award of remainder damages was recoverable under Kopplow's inverse condemnation claim. *Id*. The Supreme Court remanded the

case to us solely for consideration of Kopplow's cross-appeal point that the trial court erred in excluding some of the evidence of the cost of the fill. *Id.*

Upon remand, Kopplow contends the jury would have awarded it more damages had it heard evidence that the Kopplow property was subject to less onerous development regulations before the taking by the City, i.e., Kopplow would have presented to the jury evidence regarding the cost to fill the property from 741 feet to 743 feet. Kopplow asks that we reverse the trial court's judgment and remand the case for a new trial on the issue of damages only.

## DISCUSSION

Initially, we address the City's contention that Kopplow failed to preserve error on the issue of vested rights. Specifically, the City claims that Kopplow failed to appeal the trial court's March 16, 2009 "Interlocutory Order on Plaintiff's Request for Declaratory Relief," ruling that Kopplow's vested rights permit does not apply to the City's flood plain and storm water regulations, and thus waived its right to complain about vested rights on appeal.

We disagree that Kopplow failed to preserve error on this issue. First, Kopplow was not required to appeal the complained-of order. An interlocutory appeal was not available to Kopplow, and the ruling was subsumed in the final judgment. Second, Kopplow met its burden of preserving error. "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El Paso 2002, no pet.). Kopplow objected to the exclusion of the vested rights evidence, and made an offer of proof as to damages. Thus, Kopplow properly preserved error on the vested rights issue. *See id.*; *see also* TEX. R. APP. P. 33.1.

### Standard of Review

Having determined that Kopplow properly preserved error, we must first interpret section 245.004 to determine whether the trial court erred in concluding that the exemption provided in

section 245.004(9) mandates that the floodplain regulation changes applied retroactively and, thus, in excluding evidence of Kopplow's vested rights status. *See* TEX. LOC. GOV'T CODE ANN. § 245.004(9) (West 2005). When issues involve the interpretation of a statute itself, we apply a *de novo* standard of review. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010) (an issue of statutory construction is a legal question which we review de novo); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding statutory construction is a question of law); *see also Ustanik v. Nortex Found. Designs, Inc.*, 320 S.W.3d 409, 412 (Tex. App.—Waco 2010, pet. denied) (if resolution of the issue requires us to construe statutory language, we review under a de novo standard; once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case).

In construing a statute, our main objective is to ascertain and give effect to the intent of the Legislature. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 892 (Tex. 2000); *Wickware v. Sullivan*, 70 S.W.3d 214, 218 (Tex. App.—San Antonio 2001, no pet.). When interpreting a statute, we "consider the entire act, its nature and object, and the consequences that would follow from each construction." *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991); *see also* TEX. GOV'T CODE ANN. § 311.023 (West 2013). We must "reject interpretations of a statute that defeat the purpose of the legislation so long as another reasonable interpretation exists." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). When a statute is clear and unambiguous, we need not resort to rules of construction or extrinsic evidence to construe it. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983). Instead, we may determine the intent of the Legislature from the plain and ordinary meaning of the words used within the statute. *Id.*

**ANALYSIS**

Kopplow contends that the trial court erred in excluding evidence of the damages Kopplow claimed for the loss of its vested development rights. Chapter 245 of the Local Government Code recognizes a developer's vested rights and requires a regulatory agency to review a permit application based on the regulations in effect at the time the project's first application is filed. *See Milestone Potranco Dev., Ltd., v. City of San Antonio*, 298 S.W.3d 242, 248 (Tex. App.—San Antonio 2009, pet. denied). Generally, "a project with vested rights is not subject to intervening regulations or changes after the vesting date." *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 245 (Tex. App.—San Antonio 2012, pet. denied); *see also Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247, 250 (Tex. App.—Austin 2011, pet. denied) ("The obvious intent of chapter 245 is to prohibit land-use regulators from changing the rules governing development projects 'in the middle of the game[.]'").

Certain types of municipal regulations are, however, exempted from Chapter 245's limitations. *See* TEX. LOC. GOV'T CODE ANN. § 245.004 (West 2005). The exemption at issue here provides:

> This chapter does not apply to:
>
> (9) regulations to prevent imminent destruction of property or injury to persons from flooding that are effective only within a flood plain established by a federal flood control program and enacted to prevent the flooding of buildings intended for public occupancy[.]

TEX. LOC. GOV'T CODE ANN. § 245.004(9) (West 2005). The parties do not cite to, and we have not located, any authority interpreting this particular statutory exemption.

The City persuaded the trial court that exemption (9) bars recognition of Kopplow's vested rights. On appeal, the City argues that exemption (9) applies because the City is a community

participating in the National Flood Insurance Program (NFIP), and that the City is the local flood plain administrator for the NFIP. We disagree.

The plain language of the statute indicates that cities are allowed to enforce against vested rights only those flooding regulations "*established* by a *federal* flood control program" (emphasis added). The record contains no evidence showing that the NFIP established the City's flood plain. Although the City contends that it adopted federally-established flood plain ordinances, it also acknowledges that the NFIP encourages communities to develop more stringent flooding regulations, and that the City did so. Thus, the City is the entity that established the flood plain, not the NFIP. The record supports the distinction between the FEMA 100-year flood plain and the City's ultimate development flood plain, with the City's regulations being more onerous than FEMA's.

By specifying regulations effective in a federally-established flood plain, the Legislature expressed a clear intent to distinguish from non-federal, or local, flood plain regulations. *See Comm'n for Lawyer Discipline v. Denisco*, 132 S.W.3d 211, 216 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (express mention of one thing ordinarily presumed to exclude all others). It is also noteworthy that the Legislature chose to use the qualifier "only," therefore indicating an intention to exempt federally-defined flood plains alone. Accordingly, we agree that the trial court erred in concluding that section 245.004(9) exempted Kopplow's vested rights, and in excluding evidence of the cost to fill the property from 741 feet to 743 feet due to the City's new flooding regulations.

### HARM

Having determined that the trial court erred in excluding evidence of the cost of the fill related to Kopplow's vested rights permit, we must now examine whether the error harmed Kopplow.

*Standard of Review*

Evidentiary rulings are committed to the trial court's sound discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). A trial court abuses this discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). Even if a trial court errs by improperly admitting evidence, reversal is warranted only if the error was harmful, i.e., it probably resulted in an improper judgment. TEX. R. APP. P. 44.1; *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

In determining whether the error was harmful, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted or excluded. *McShane*, 239 S.W.3d at 234; *Nissan Motor*, 145 S.W.3d at 144. "[I]t is not necessary for the complaining party to prove that 'but for' the exclusion of evidence, a different judgment would necessarily have resulted." *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992). The complaining party must only show "that the exclusion of evidence probably resulted in the rendition of an improper judgment." *Id.*

If erroneously excluded evidence was crucial to a key issue, the error was likely harmful. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 874 (Tex. 2009) (exclusion of evidence harmful because evidence was directly related to central issue in case, i.e., value of condemned property); *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). By contrast, exclusion is likely harmless if the evidence was cumulative and not controlling on a material issue dispositive of the case. *Sevcik*, 267 S.W.3d at 873; *Corrales v. Dept. of Family & Protective Servs.*, 155 S.W.3d 478, 487 (Tex. App.—El Paso 2004, no pet.).

Here, the issue of Kopplow's vested rights was a crucial question, because it bore upon the amount of remainder damages owed for the inverse condemnation. The jury determined that Kopplow was entitled to $690,000 as compensation for having to fill the property from 743 feet to 745 feet. However, assuming that there was no exemption for Kopplow's vested rights, Kopplow should have been permitted to present evidence of the additional cost to fill the property from 741 feet to 743 feet; i.e., that the cost of the entire fill would have been more than $690,000.

Kopplow provided, through its expert, engineer Dennis Rion, reliable and admissible evidence in support of its entire damages. *See* TEX. R. EVID. 103(a)(2) (error cannot be predicated on the exclusion of evidence unless the substance of the evidence was made known by offer, or was apparent from the context); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 719 (Tex. App.—Dallas 2011, pet. denied) (noting reviewing court cannot determine whether exclusion of evidence was harmful without an offer of proof). Rion would have testified to the quantities and costs shown in an exhibit tendered to the trial court in a bill of exception. The damages model in that exhibit projects the cost for grading existing conditions on the Kopplow property to an elevation of 745.16 feet. The project total is estimated at $867,248. Kopplow also tendered a bill of exception from its appraisal expert, David Bolton. Bolton's detailed appraisal report estimates that the total compensation due Kopplow is $1,115,000, i.e., market value of the part taken and damages to the remainder property. Had the trial court ruled in Kopplow's favor on the vested rights issue, Bolton would have presented testimony consistent with the tendered appraisal report.

Because the jury did not hear evidence related to the cost required to fill the *entire* property, we conclude that the exclusion harmed Kopplow. *See, e.g., Caffe Ribs, Inc. v. State*, 328 S.W.3d 919, 931-33 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Oddo v. State*, 912 S.W.2d 831, 833-34 (Tex. App.—Dallas 1995, writ denied) (holding exclusion of evidence related to

compensable damages was harmful where it was the only evidence regarding remainder damages); *State v. Oak Hill Joint Venture*, 815 S.W.2d 827, 832 (Tex. App.—Austin 1991, no writ) (holding exclusion of evidence of true remainder size deprived condemnors of opportunity to present probative evidence regarding effect of taking on market value of designated remainder, and was thus harmful).

## CONCLUSION

Based on the foregoing, we sustain Kopplow's issue on cross-appeal. We reverse the judgment of the trial court awarding Kopplow damages in the amount of $690,000, and remand the case to the trial court for a new trial on the issue of remainder damages related to the inverse condemnation claim.

Rebeca C. Martinez, Justice